IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION, | ) | |
| | ) | |
| Plaintiff, and | ) | |
| | ) | |
| CONTRICE TRAVIS, | ) | CIVIL ACTION |
| | ) | FILE NO.:  1:10-CV-03132-SCJ-ECS |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EXEL INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S RESPONSE IN OPPOSITION TO EXEL INC.'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff, the Equal Employment Opportunity Commission (the "EEOC"), and files this, its Response in Opposition to Exel Inc.'s Motion for Summary Judgment (the "Motion") pursuant to Rule 56, Federal Rules of Civil Procedure and Local Rule 56.1, United States District Court, Northern District of Georgia (the "Response"), showing this Court that questions of material fact exist as to the liability of Defendant Exel Inc. ("Exel") and, as such, the Motion should be DENIED.

# I. <u>INTRODUCTION</u>

The EEOC asserts a claim for sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, on behalf of Contrice Travis ("Travis"), who was denied a promotion because of her gender. Exel's Motion ignores reality and espouses a fiction that its refusal to promote Travis was free of discrimination. The complete story of Exel's hiring process raises a material question of fact that requires that the Motion be DENIED.[1]

# II. <u>STATEMENT OF FACTS</u>

## A.   <u>Travis's Employment at Exel.</u>

Exel is a global supply chain management company. <u>See</u> Exhibit "A", p. 1. Among other things, Exel operates numerous warehouses in which its customers' products are stored and then distributed. <u>Id</u>.  One of these warehouses is the PPG Industries ("PPG") facility where PPG's products are stored and then shipped to its customers. <u>See</u> Deposition of David Harris ("Harris Dep."), 13:6-18, cited portions

---

[1] Exel states in a footnote that summary judgment is appropriate because the back pay sought is approximately $1,100.  <u>See</u> Exel's Brief, n. 5.  Exel's attempt to obtain summary judgment by intimating to the Court that this is a small or insignificant case is improper and wholly unsupported by the law.  Even if the amount of backpay was one dollar, it has no relevance to whether a dispute of material fact exists.  In addition, the claim in this case is for the denial of a person's civil rights, which is hardly insignificant.  Further, Exel ignores the claim for compensatory and punitive damages of up to $300,000 in this case, and injunctive relief.  Therefore, the relief and damages available in this case are hardly small or insignificant, and certainly not grounds for summary judgment.

of which are attached as Exhibit "B". David Harris ("Harris") has been employed by Exel as the General Manager of the PPG facility since November 2006. Harris Dep., 13:6-20. In 2007 and 2008, the management structure at the PPG facility consisted of Harris as the highest-level Exel employee, with one Operations Manager below him, and below the Operations Manager were three supervisors who managed the group leads[2] and associates. Harris Dep., 32:11-33:3.

Travis began working at Exel's PPG facility in November 2005. See Deposition of Contrice Travis ("Travis Dep."), 12:9-16, cited portions of which are attached as Exhibit "C". She started as a tasker and was moved to a group lead position in 2006. Travis Dep., 49:11-23. In June 2007, Harris announced to the staff at the PPG facility that James Kenneth Teal ("Teal") was moving from Operations Supervisor to Inventory Control Supervisor. Travis Dep., 82:7-17.82:21-83:21. Shortly thereafter, Travis began working with Teal as the Inventory Control Lead. Travis Dep., 46:5-11; 77:9-15. At the time when Teal was made Inventory Control Supervisor, Harris told Teal that he would not promote Travis to the Inventory Control Supervisor position because he "did not want to put a woman in that position." See Deposition of James Kenneth Teal ("Teal Dep."), 71:8-21, cited portions of which are attached as Exhibit "D". Harris later told Teal

---

[2] A lead position is a layer between the associates and the supervisors that executes the directions and instructions given by the supervisor. Harris Dep., 32:11-33:15.

that he did not want to put a woman in any management position. Teal Dep., 72:15-73:11.

In fact, Travis was not considered for openings for supervisor positions in 2007 and early 2008. Travis Dep., 84:25-85:8; Harris Dep. 93:10-94:13; 96:5-97:19; 100:15-23.  In 2007, Travis complained to Marie Murphy in Human Resources that Harris would not make her a supervisor because she is a woman. Travis Dep., 131:25-132:14.  Travis also complained to Franklin Hudson in Human Resources that she felt she was being overlooked for promotions by Harris. Travis Dep., 133:5-134:9.  Rather than addressing the issue, Hudson advised her to look into transferring to another facility. Travis Dep., 133:5-134:9.  Because she felt like Harris was continually passing her over for supervisor positions, in 2008 Travis began looking for another job with more opportunity.  Travis Dep., 116:15-30; see also Affidavit of Contrice Travis, ¶¶ 7-8, which is attached as Exhibit "E".

**B.      Travis' Interest in the June 2008 Supervisor Opening.**

In May 2008, Teal was promoted to Operations Manager, leaving his position as Inventory Control Supervisor. Teal Dep., 22:21-23:2; see also Exhibit "F".   Harris announced the promotion to the staff at the PPG facility in a memorandum on May 29, 2008. Harris Dep., 114:22-115:16; see also Exhibit "F". Harris stated that Teal "has been promoted through the management ranks as

operations supervisor, training supervisor, inventory management supervisor, systems 'super user' and special projects supervisor." See Exhibit "F".

In May or June 2008, Harris told Travis that Exel was going to fill Teal's position (the "Open Position"). Harris Dep., 57:11-58:6; 162:10-21. Travis showed an interest in the Open Position and asked Harris "are we going to have an inventory supervisor, I'm interested in doing that." Harris Dep., 57:11-58:6.  Harris told her that Exel would be hiring an Operations Supervisor, not an Inventory Control Supervisor. Harris Dep., 57:20-58:6; 162:10-21; Travis Dep., 122:15-22. Harris concedes that Travis made it clear that she wanted to be the Inventory Control Supervisor. Harris Dep., 57:11-58:6.  Harris not only told Travis that Exel was not hiring for that position, he explicitly told Travis that no such position even existed. Harris Dep., 57:11-58:6; 162:10-21; 163:13-18.

Travis' immediate supervisor, Teal, believed that Travis should have been promoted to replace him in his old position of Inventory Control Supervisor because of her experience and knowledge in the inventory area. Teal Dep., 84:4-16.  Travis knew the Inventory Control Supervisor position as well or better than Teal did. Teal Dep., 110:3-22.  Travis also knew the operating systems better than anyone in the PPG facility. See Deposition of Donald Crankshaw, Jr. ("Crankshaw Dep."), 26:16-24, cited portions of which are attached as Exhibit "G".  Harris also

admits that Travis was very knowledgeable about the PPG inventory processes. Harris Dep., 47:22-48:11.

## C.   Exel's Hiring Process as Executed by Harris was Discriminatory.

The hiring of supervisors is Harris' responsibility and he has the final say regarding who is hired for those positions. Harris Dep., 43:18-23.  Likewise, Harris is responsible for and has the final decision-making authority to make promotions. Harris Dep., 44:2-19.  Exel attempts to place employees being laid off at other facilities that have job openings (the "Layoff Procedure"), but these employees have to submit an internal application and interview with the General Manager of the new facility. See Deposition of Franklin Hudson ("Hudson Dep."), 41:12-42:5; 58:18-59:12, cited portions of which are attached as Exhibit "H"; see also Deposition of Lisa B. Guydon as the Rule 30(b)(6) Representative of Exel, Inc. ("Guydon Dep."), 240:9-19, cited portions of which are attached as Exhibit "I". Although they are supposed to consider the laid off employees first, General Managers have total discretion as to whether to hire the laid off employee for the open position. Hudson Dep., 41:12-42:5; 58:18-59:12; Guydon Dep., 240:9-19.  If the General Manager does not hire the laid off employee, then the job would be open to other internal and external candidates. Guydon Dep., 252:2-18.

After Teal was promoted in May 2008, Exel posted the opening to fill the

Open Position on or about June 19, 2008. <u>See</u> Exhibit "J"; Harris Dep., 87:5-24. Exel received five applications through this posting. <u>See</u> Exhibit "K".  Although five applications were submitted, Travis did not apply because Harris told her that he was not hiring for the Inventory Control Supervisor position. Harris Dep., 57:110-58:6; 162:10-21; Travis Dep., 122:15-22; Travis Aff., ¶ 11.  Despite there being five applications, Harris contends that Human Resources provided him with only one name for Teal's replacement, Michel Pooler, who was the Quality Assurance Coordinator at Exel's Hawaiian Tropic facility. Harris Dep., 74:5-75:3; <u>See</u> Deposition of Michel Pooler, ("Pooler Dep."), 11:12-16; 57:5-11, cited portions of which are attached as Exhibit "L".

Exel claims Pooler was given priority consideration for the Open Position at the PPG facility because he was being laid off from the Hawaiian Tropic facility. Harris Dep., 75:7-76:2.  Pooler, however, never filled out the internal application that is required for a transfer.[3] Pooler Dep., 20:23-25; Hudson Dep., 58:18-59:12; Guydon Dep., 240:9-19.  Rather, Harris interviewed Pooler for only ten minutes in early July 2008, a few days before he started work, and decided to hire him to replace Teal. Harris Dep., 75:21-76:7; Pooler Dep., 21:4-13.  That is, Pooler was hired to replace Teal without ever formally applying for the Open Position.

---

[3] And no such internal application was produced in discovery.

7

Exel contends that hiring Pooler instead of promoting Travis was not discriminatory and, instead, was just part of its usual process of finding new jobs for displaced employees. Exel's Brief at 7-8.  Harris, however, did not know at the time he deceived Travis about the nature of the Open Position that Pooler would qualify under Exel's Layoff Procedure. <u>See</u> Exhibit "M", p. 9; Notes from Fact Finding Conference.  In addition, Pooler tells a markedly different story of how he obtained the Open Position.  In June 2008, Pooler was called in to work on a Saturday and met with Franklin Hudson, an Exel Human Resources representative, and Michael Blose, the general manager of the Hawaiian Tropic facility. Pooler Dep., 13:2-18; 19:13-20:17; 21:14-20.  Pooler was told that his position was being eliminated, but that there was an Inventory Supervisor position, the Open Position, available at the PPG facility.  Pooler Dep., 20:4-17; 22:19-24; 52:19-25.  Blose threatened him that if he told anyone that they were giving him the Open Position, then the position would not be available. Pooler Dep., 13:2-17; 19:17-20:17; 53:1-10.  Pooler was told to keep his mouth shut, keep his phone on, and "just hang tight". Pooler Dep., 52:19.  Pooler knew that Lisa Williams, the female Inventory Supervisor at the Hawaiian Tropic facility, was still working there, and he testified that when she was laid off, the secrecy all made sense. Pooler Dep., 19:17-20:17. Williams was not transferred to another location. Pooler Dep., 20:18.  Pooler did

not fill out an internal application or submit a resume for the Open Position, rather he just interviewed with Harris.  Pooler Dep., 20:23-25; 21:1-13.

After Pooler was hired to replace Teal, Harris told Travis that he would not make her a supervisor at the PPG facility. Travis Dep., 117:6-21.  Travis resigned in late July 2008 to take another job.  Travis Dep., 16:14-22.  Immediately after Travis left Exel, Pooler was made the Inventory Control Supervisor, which is the exact position Exel admits Travis wanted to apply for, but which Harris denied even existed. Pooler Dep., 13:13-15:11; Travis Dep., 15:4-10; Teal Dep., 40:4-7. Therefore, because Harris deceived Travis and deterred her from applying for the Open Position, by the time Harris interviewed Pooler, it was a *fait accompli* that Travis would not be selected.

**D.    Pooler is Given the Job that Travis told Harris She Wanted to Apply For: Inventory Control Supervisor.**

Pooler started working at the PPG facility in early July 2008 as a supervisor over the first shift, not as Inventory Control Supervisor.  Pooler Dep., 13:2-18. After four days as supervisor over the first shift, Harris moved Pooler to the second shift. Pooler Dep., 13:21-14:8.  Harris told Pooler that it did not seem like he was too familiar with supervising the operations of the staff, and Pooler agreed.  Pooler Dep., 13:24-14:8.  The shift supervisor position Pooler held at the PPG facility was "completely different" than the position he held at the Hawaiian Tropic facility.

9

Pooler Dep., 16:24-17:1.  In fact, Pooler told Harris and Teal that he was lost and he was "looking stupid".  Pooler Dep., 14:9-15:5.  Therefore, Harris told him to train with Travis in inventory the majority of his time.  Pooler Dep., 14:9-15:5.

All of the training Pooler received at the PPG facility was from Travis. Pooler Dep., 25:1-8.  Travis trained Pooler in the inventory area and in EMIS and PKMS, the two operating systems used at the PPG facility. Pooler Dep., 17:2-19; 32:25-33:20.  Pooler was just "floating" the first few weeks at the PPG facility, but as soon as Travis resigned and left Exel, Pooler was immediately made Inventory Control Supervisor. Pooler Dep., 15:1-11; 25:9-17.  According to Pooler, "Dave said, Well why don't you keep on training with Contrice . . . [t]hen the next thing I know, she's leaving . . . then I was brought in to Dave's office.  Then now I'm inventory supervisor." Pooler Dep., 15:3-11.   Pooler was then in charge of inventory and the other supervisor, Donald Crankshaw, supervised the operations. Crankshaw Dep., 33:10-34:8.  Pooler remained as Inventory Control Supervisor until his separation from Exel in January 2009. Pooler Dep., 48:7-14.  When Pooler left, Crankshaw became the Inventory Control Supervisor.  See Exhibits "N" and "O"; Crankshaw Dep., 13:15-14:11.

Exel contends that Pooler was qualified to replace Teal because he was a supervisor at his former facility and would be a supervisor at the PPG facility.

Harris Dep., 120:25-122:23.  But Harris did not even know if Pooler was a shift supervisor at his former facility, which is the position he was assigned to when he started at the PPG facility. Harris Dep., 120:25-122:23.  Despite Exel's contention that Pooler was qualified for the Open Position because he was a supervisor at his former facility, Pooler never managed a single employee at the PPG facility during his tenure despite being first shift supervisor, then second shift supervisor, and, finally, the Inventory Control Supervisor.  Pooler Dep., 24:9-17; 44:19-22.

When Pooler took over as Inventory Control Supervisor, he also took over Travis' role and performed the duties and responsibilities that she had been performing.  Pooler Dep., 55:5-10.  When asked if Travis was replaced by anyone, Pooler responded, "Me". Pooler Dep., 72:23-25. Travis knew more about the Inventory Control Supervisor position than Pooler did by a "hundred percent". Pooler Dep., 33:18-25.  Pooler believed that Travis was more qualified than he was for the Inventory Control Supervisor position and "absolutely" had a better understanding of the position.  Pooler Dep., 54:22-55:4.

Exel claims that Pooler was an Operations Supervisor, and that there was no employee at the PPG facility with the title "Inventory Supervisor" or "Inventory Control Supervisor."  Harris Dep., 35:19-21.  But the record evidence belies this bizarre contention.  Teal was Inventory Control Supervisor when he was promoted

to Operations Manger and replaced by Pooler. Teal Dep., 20:22-25.  Pooler states that he became the Inventory Control Supervisor when he replaced Teal. Pooler Dep., 15:6-11; 17:2-8.  When Pooler was laid off as part of a reduction in force on January 15, 2009, Harris provided him with a separation letter he drafted in which he identified Pooler as "Exel/PPG Inventory Management Supervisor." See Exhibit "P".  In this letter, Harris states, "This workforce reduction affects your position as an Exel/PPG Inventory Management Supervisor."  See Exhibit "P".  Harris went on to laud Pooler for his "contribution in inventory management". See Exhibit "P". In addition, Exel identified Pooler's job title as "Inventory Control Sup." when it filled out documentation related to his unemployment claim.  See Exhibit "Q", top of p. 2.  Further, as recently as February 2011, Crankshaw was identified by his supervisor, Dan Bair, as "Inventory Control Supervisor" in performance write-ups he received. Crankshaw Dep., 42:21-43:10; 44:10-23; Exhibits "N" and "O".

The process by which Pooler was hired as the Inventory Control Supervisor was not free of discrimination as Exel contends.  Rather, Harris discriminated against Travis by deceiving her about the position being filled, thus deterring her from applying, and then filling the position with a male who did not submit an application and transferring him to the Inventory Control Supervisor position immediately upon Travis's resignation.  Therefore, the Motion should be denied.

## III.   ARGUMENT AND CITATIONS OF AUTHORITY

Summary judgment is appropriate only when the movant has conclusively shown that there exist no genuine issues of material fact and is entitled to judgment as a matter of law.  At this stage, "the Judge's function is not to weigh the evidence to determine the truth of the matter, but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In assessing the facts, the trial court must view the evidence, together with all reasonable inferences to be drawn therefrom, in a light most favorable to the non-moving party.  Id. at 255.  Moreover,

> [s]ummary judgment may be inappropriate even where the parties agree on basic facts, but disagree about the legal inferences that should be drawn from these facts.  If reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment.

Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung, 695 F.2d 1294, 1296-1297 (11th Cir. 1983) (citations omitted). Defendant cannot show that there exists no genuine issue of material fact as to its liability for the EEOC's claims in this case. Therefore, the Motion should be DENIED.

## A.   The EEOC Can Establish a *Prima Facie* Case of Discrimination.

To establish a *prima facie* case of discrimination in a failure to promote case, the EEOC must demonstrate that Travis: (1) is a member of a protected

13

minority; (2) was qualified for and applied for the promotion; (3) was rejected despite these qualifications; and (4) other equally or less qualified employees who were not members of the protected minority were promoted. <u>Wu v. Thomas</u>, 847 F.2d 1480, 1483-84 (11th Cir. 1988). For purposes of the Motion, Exel concedes three of the four elements of the *prima facie* case. Exel does not concede that Travis applied for the Open Position, and argues that the futile gesture doctrine does not apply. The EEOC, however, can establish the application element of the *prima face* case for two reasons: (1) Exel did not require an actual application for the Open Position and knew of Travis' interest in the Open Position; and (2) even if an application was required, Exel's discriminatory conduct prevented Travis from formally applying for the open position.

(1) <u>Exel did not require an actual application for the Open Position and knew that Travis was interested in the position it actually filled.</u>

Exel touts its formal hiring process that it says requires an application, and attempts to obtain summary judgment because Travis did not formally apply for the Open Position. <u>See</u> Exel's Brief at 16-17. But it is undisputed that Pooler himself did not submit an application either, and no such application was produced in discovery. Pooler Dep., 20:23-25. A person in Pooler's situation was required to fill out an application. Hudson Dep., 59:1-10. However, Exel ignored its normal processes and slotted Pooler for the Open Position after telling Travis that it was

14

not hiring for the position she sought. Travis Dep., 122:15-22; Harris Dep., 57:11-58:6; 75:7-76:2; 162:10-21.  It is disingenuous, at best, for Exel to now seek summary judgment by arguing Travis did not formally apply for the Open Position when it did not require the person it selected to submit a formal application.

The purpose of the application element of the *prima facie* test is to "eliminate [an] obvious nondiscriminatory reason: that the plaintiff was not offered the job because the company did not know [s]he was interested." Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1133 (11th Cir. 1984).  Even though Travis did not submit a formal application, it is undisputed that she clearly expressed to Harris her interest in the Inventory Control Supervisor. Harris Dep., 57:11-58:6; 162:10-21.  Travis' expression of interest is far more of an application than what Pooler did: He got laid off and his boss told him he had a job for him as long as he kept quiet. Pooler Dep., 13:2-18; 19:13-20:17; 21:14-20.  When Pooler was later contacted about the position at the PPG facility, Exel did not even require him to submit the internal application that it says was required.  Pooler Dep., 20:23-25; Hudson Dep., 58:18-59:12; Guydon Dep., 240:9-19.  Instead, Exel merely sent his name to Harris who interviewed him and hired him. Harris Dep., 74:5-75:3; 75:21-76:7; Pooler Dep., 21:4-13.  Therefore, there is at least a question of fact as to whether Travis satisfied the application element of the *prima facie* test.

     (2)    <u>Travis is not barred from relief because Exel's discriminatory conduct kept her from applying for the Open Position</u>.

Even if Travis was required to apply for the Open Position, the only reason she did not apply is because Harris deceived her about the job to discriminate against her. "[F]ailure to apply for a position is not a bar to relief when an employer's discriminatory practices deter application or make application a futile endeavor." <u>Malarky v. Texaco, Inc.</u>, 983 F.2d 1204, 1213 (2nd Cir. 1993) <u>citing</u> <u>Int'l Bhd. of Teamsters v. United States</u>, 431 U.S. 324, 364-67 (1977). "A relaxation of the application element of the *prima facie* case is especially appropriate when the hiring process itself, rather than just the decision-making behind the process, is implicated in the discrimination claim or is otherwise suspect." <u>E.E.O.C. v. Metal Serv. Co.</u>, 892 F.2d 341, 349 (3rd Cir. 1990).

The futile gesture doctrine requires that: (1) Travis had a real and present interest in the job for which Exel was seeking applications; and (2) that she would have applied for the job but effectively was deterred from doing so by the employer's discriminatory practices. <u>See</u> <u>E.E.O.C. v. Joe's Stone Crabs, Inc.</u>, 296 F.3d 1265, 1274 (11th Cir. 2002). Harris admits Travis asked whether he was going to fill the Inventory Control Supervisor position vacated by Teal, but explicitly he told her he was not. Harris Dep., 57:11-58:6; 162:10-21. For that reason, Travis did not apply. Travis Aff., ¶ 11. Instead, Harris hired Pooler and

just weeks after he was hired, and immediately after Travis resigned from Exel, put him in the position for which Travis wanted to apply: Inventory Control Supervisor. Pooler Dep., 13:13-15:11; Travis Dep., 15:4-10; Teal Dep., 40:4-7.

Exel's continued attempt to deny that the position of Inventory Control Supervisor even exists if further evidence of how Travis was deterred from applying. Harris told Travis at the time she inquired about the Open Position that the position of Inventory Control Supervisor does not even exist. Harris Dep., 163:13-18. The record, however, is replete with evidence that it does. Teal was Inventory Control Supervisor when he was promoted to Operations Manger and replaced by Pooler. Teal Dep., 20:22-25. Pooler states that he became the Inventory Control Supervisor when he replaced Teal. Pooler 15:6-11; 17:2-8. Harris called Pooler the "Exel/PPG Inventory Management Supervisor" in his separation letter. See Exhibit "P". Exel identified Pooler's job title as "Inventory Control Sup." when it filled out documentation related to his unemployment claim. See Exhibit "Q", p. 2. And Crankshaw is now identified as the Inventory Control Supervisor. Crankshaw Dep., 42:21-43:10; 44:10-23; Exhibits "N" and "O".

It is undisputed that the only reason Travis did not apply for the Open Position is because Harris told her Exel was not hiring for the Inventory Control Supervisor position and that the position did not even exist, which excuses or

satisfies the application requirement. <u>See</u> <u>Teamsters</u>, 431 U.S. at 365 (holding that an employer's policy of discrimination can be communicated in subtle, but clear, ways, by *inter alia*, "responses to casual or tentative inquiries"). Therefore, there is at least a question of material fact as to whether the application element of the *prima facie* test is established.

**B.** **Exel's Proffered Legitimate Non-Discriminatory Reason is a Pretext for Gender Discrimination.**

Once a *prima facie* case of discrimination is established, the burden shifts to Exel "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). If the defendant carries this burden of production, the plaintiff must either "directly persuad[e] the court that a discriminatory reason more likely motivated the employer or indirectly [prove discrimination] by showing that the employer's proffered explanation is unworthy of credence." <u>Texas Dep't. of Cmty Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981).

"The method suggested in <u>McDonnell Douglas</u> . . . was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." <u>Furnco Const. Corp. v. Waters</u>, 438 U.S. 567, 577 (1978). A "*prima facie* case, combined with sufficient evidence to find that the

employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."[4] Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 148 (2000).

Exel's purported legitimate non-discriminatory reason for not promoting Travis to Inventory Control Supervisor is that its Layoff Procedure gave preference to employees being laid off when job openings occurred.[5]  This proffered reason is pretextual for two reasons: (1) A discriminatory reason more likely motivated Harris to not promote Travis and deterred her from applying for the Open Position; and (2) it is unworthy of credence because there is no evidence that Harris even knew that Pooler was being laid off and that the Layoff Procedure would be applicable to the Open Position at the time he discriminated against Travis.

(1)    Harris' discriminatory animus is the more likely reason that Travis was not promoted to the Open Position.

Harris deceived Travis about what the Open Position was, which caused her

---

[4] Exel argues on page 22 of its brief that the EEOC must satisfy the so-called "pretext plus" standard that purports to require showing that the stated reason is false **and** that discrimination is the real reason to survive summary judgment.  That is not the applicable standard. See Martin v. Peach County, Ga., 5:10-CV-236, 2011 WL 4830176, n.17 (11th Cir. October 12, 2011).

[5] Exel submits conclusory purported facts in support of its argument that its reason for hiring Pooler over Travis is not pretext. See Exel's Brief at 20-21.  These alleged facts, however, are unsupported by the record and should not be considered by the Court. See L.R. 56.1B.(1).

to not apply for it.  Harris' conduct is consistent with the discriminatory animus he showed toward women, and specifically Travis, in the past.  For example, Harris told Teal he would not put a woman in the Inventory Control Supervisor or any management position at the PPG facility. Teal Dep., 71:8-21; 72:15-73:11.  He also told Travis after Pooler was hired that he would not make her a supervisor at that location.  Travis Dep., 117:6-21.  In addition, Exel admits Travis was qualified for the Open Position for purposes of the Motion.   Therefore, Harris' discriminatory animus combined with his deception regarding the Open Position creates a question of fact as to whether a discriminatory reason more likely motivated Exel to not promote Travis into the Open Position.  See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) (holding that admission of qualification for position and evidence of animus by the decision maker was sufficient to deny summary judgment).

      (2)    <u>Exel's alleged non-discriminatory reason is not worthy of credence because Harris did not know the Layoff Procedure would apply to the Open Position unit after he deterred Travis from applying.</u>

Exel uses its Layoff Procedure as an excuse for its discrimination against Travis.  See Exel's Brief at 19-22.  Harris, however, had already rejected Travis for the Open Position because of her sex before he knew there was an employee to consider under Exel's Layoff Procedure.  That is, Exel had already discriminated

20

against Travis by deceiving her as to the position to be filled before Pooler was provided to Harris to be considered.  Therefore, Exel's Layoff Procedure is a red herring and the real reason Travis was not promoted to the Open Position was discrimination.

Evidence that an applicant outside of the complaining party's class was preselected "operates to discredit the employer's proffered explanation for its employment decision" and "is relevant evidence of the employer's motivation." Goostree v. Tennessee, 796 F.2d 854, 861 (6th Cir. 1986).  Harris rejected Travis by deceiving her about the position for which Exel was hiring when she expressed interest in the Inventory Control Supervisor position.  Harris Dep., 57:11-58:6; 162:10-21; Travis Dep., 122:15-22.  This discussion was in "May or June" when Teal was being promoted before Harris even knew that Pooler would be referred to him under the Layoff Procedure. See Exhibit "M", top of p. 9; Harris Dep., 57:11-58:6.  Therefore, rather than an applicant being preselected, Travis was deceived and "pre-rejected" for the position.  See Kimble v. Wasylyshyn, No. 10-3110, 2011 WL 4469612, at 4-5 (6th Cir. Sept. 28, 2011) (holding that the pre-rejection of the plaintiff created a question of material fact on the issue of pretext).

While Exel may argue that even if Harris discriminated against Travis before he even knew that Pooler was a candidate, and even if Travis had applied for the

Open Position, Pooler still would have been hired under the Layoff Procedure.  It is undisputed, however, that Harris was not required to hire a laid off employee referred to him; rather, he had total discretion as to whether to hire him.  Hudson Dep., 41:12-42:5; 58:18-59:12; Guydon Dep., 240:9-19. Pooler was even told that "if it doesn't work out, then call Franklin Hudson" to discuss separation and severance. Pooler Dep., 52:14-25.  Next, Exel contends that Pooler was qualified to replace Teal because he was a supervisor at his former facility and would be a supervisor at the PPG facility. Harris Dep., 120:25-122:23.   But Harris did not even know if Pooler was a shift supervisor at his former facility, which is the position he was assigned to (in name only) when he started at the PPG facility. Harris Dep., 120:25-122:23.   More importantly, Pooler never managed a single employee at the PPG facility, which rendered his supervisory experience entirely irrelevant.  Pooler Dep., 24:9-17; 44:19-22.  Instead, when he started working at the PPG facility, he says he was lost and "looking stupid".  Pooler Dep., 14:9-15:5.

(3)   <u>Exel's Layoff Procedure was used as subterfuge for discrimination in the selection of Pooler.</u>

Although Exel's alleged preference for hiring laid off employees may be a legitimate practice in ordinary circumstances, in the case of Pooler's selection, it was subterfuge for sex discrimination.  That is, in this instance the practice was used to not only deter and exclude Travis, the most qualified candidate, but was

also used to exclude Lisa Williams, another qualified female. First, not only did Harris misrepresent that the new selectee would not be an "inventory supervisor", he had already admitted to Teal that he would not promote Travis to the Inventory Control Supervisor position because he "did not want to put a woman in that position."[6] Teal Dep., 71:8-21. Second, Williams, an *Inventory Supervisor* at Pooler's facility was also laid off. Pooler Dep., 20:13-17; 28:9-12. However, despite Williams' lay off status, she was not referred to Harris for consideration. Harris Dep., 74:5-75:3. Pooler was even able to deduce that the reason for the threats and secrecy surrounding his selection was to keep Williams in the dark about the PPG position. Pooler Dep., 19:17-20:17. If in this instance the so-called preference for laid off employees was applied in a legitimate, non-discriminatory fashion, Pooler's consideration would not have been expressly conditioned upon him "keeping [his] mouth shut." Pooler Dep., 52:14-25.

Given the misrepresentation to Travis, and Williams' standing as a candidate, any notion of non-discrimination in this instance was ruined when a general manager, Mike Blose, threatened that the position "would not be available" for Pooler if he told anyone about the opening. Pooler Dep., 53:1-10; 64:2-24. Even more telling is the fact that Hudson, a Human Resources representative, was

---

[6] Harris later told Teal that he did not want to put a woman in *any* management position. Teal Dep., 72:15-73:11.

present during Blose's assertion that Pooler's secrecy was required in order to be considered for the position.[7]   Pooler Dep., 13:2-18.   Such secrecy would explain why Exel did not require Pooler to submit an internal application that it says was ordinarily required.   Pooler Dep., 20:23-25; Hudson Dep., 58:18-59:12; Guydon Dep., 240:9-19.   This evidence, in its totality, makes it clear that a discriminatory motive to exclude females from consideration permeated the entire selection process from beginning to end.   For these reasons, at a minimum, there is a genuine issue of material fact whether the alleged application of the Layoff Procedure, in this instance, was legitimate and nondiscriminatory.

Finally, while Exel contends that Harris considered Pooler because of the Layoff Procedure and hired him because he was qualified for the Open Position, both reasons strain credibility under the undisputed facts in the record.   The undisputed facts demonstrate that Harris deceived Travis about not back-filling Teal's Inventory Control Supervisor position, hired a male, had Travis teach him the ropes, and changed his job designation to "inventory supervisor" soon as she resigned. In sum, Harris' absolute discretion as to whether to hire or reject Pooler,

---

[7] While Hudson claims he does not remember the meeting with Pooler, he does not doubt that it occurred.   Hudson Dep., 63:22-64:5.   He asserts that other supervisors "had to have known" of the position, but has no real evidence to that effect. Hudson Dep., 61:13.   Further, this assertion is the polar opposite of Blose's admonition to Pooler, *while in Hudson's presence*, to keep the position secret.

combined with the evidence of Harris' discriminatory animus, Travis' superior knowledge of the job and Pooler's total lack of qualifications for the job[8], and the secrecy surrounding Pooler's selection, demonstrates a question of fact as to whether the Layoff Procedure was the real reason Travis was not promoted to the Open Position or whether that reason is pretext for discrimination.  Therefore, the Motion should be DENIED.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the EEOC prays that the Motion be DENIED, and that the EEOC have such other and further relief as is just and proper.

Respectfully submitted, this 9th day of December, 2011.

<u>s/Steven A. Wagner</u>
Steven A. Wagner
Georgia Bar No. 000529
EEOC - Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
Telephone:  (404) 562-6897
Facsimile:  (404) 562-6905
E-mail: steven.wagner@eeoc.gov

---

[8] Pooler admits that he was "lost" but Harris told him "keep on training with Contrice." Pooler Dep., 15:1-5.

25

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, | ) | |
| | ) | |
| Plaintiff, and | ) | |
| | ) | |
| CONTRICE TRAVIS, | ) | CIVIL ACTION |
| | ) | FILE NO.:  1:10-CV-03132-SCJ-ECS |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EXEL INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>CERTIFICATION OF COMPLIANCE</u>

Pursuant to Local Rule 7.1D, counsel certifies that this response was prepared using Times New Roman 14-point font.

This 9th day of December, 2011.

<u>s/Steven A. Wagner</u>
Steven A. Wagner
Georgia Bar No. 000529

EEOC - Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
Telephone:  (404) 562-6897
Facsimile:  (404) 562-6905
E-mail: steven.wagner@eeoc.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, and | ) ) | |
| CONTRICE TRAVIS, | ) ) | CIVIL ACTION FILE NO.:  1:10-CV-03132-SCJ-ECS |
| Plaintiff-Intervenor, | ) ) | |
| v. | ) ) | |
| EXEL INC., | ) ) | |
| Defendant. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a copy of the foregoing PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S RESPONSE IN OPPOSITION TO EXEL INC.'S MOTION FOR SUMMARY JUDGMENT by filing the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record:

David R. Kresser, Esq.
***Counsel for Defendant***

Rudjard M. Hayes, Esq.
***Counsel for Plaintiff-Intervenor***

This 9th day of December, 2011.

s/Steven A. Wagner
Steven A. Wagner
Georgia Bar No. 000529

EEOC - Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
Telephone:  (404) 562-6897
Facsimile:  (404) 562-6905
E-mail: steven.wagner@eeoc.gov