IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, and | ) ) | |
| CONTRICE TRAVIS, | ) ) | CIVIL ACTION FILE NO.: 1:10-CV-03132-SCJ-ECS |
| Plaintiff-Intervenor, | ) ) | |
| v. | ) ) | |
| EXEL INC., | ) ) | |
| Defendant. | ) | |

**PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S STATEMENT OF ADDITIONAL MATERIAL FACTS THAT PRESENT A GENUINE ISSUE TO BE TRIED**

COMES NOW Plaintiff, the Equal Employment Opportunity Commission (the "EEOC"), and files this, its Statement of Additional Material Facts that Present a Genuine Issue to be Tried in support of its Response in Opposition to Exel Inc.'s Motion for Summary Judgment (the "Response"), which is filed contemporaneously herewith, and respectfully shows the Court as follows:

1.

Exel is a global supply chain management company. See Exhibit "A" to the EEOC's Response to the Motion for Summary Judgment (the "Response"), p. 1.

2.

Among other things, Exel operates numerous warehouses in which its customers' products are stored and then distributed. See Exhibit "A" to the Response, p. 1.

3.

One of these warehouses is the PPG Industries ("PPG") facility where PPG's products are stored and then shipped to its customers. See Deposition of David Harris ("Harris Dep."), 13:6-18, cited portions of which are attached to the Response as Exhibit "B".

4.

David Harris ("Harris") has been employed by Exel as the General Manager of the PPG facility since November 2006. Harris Dep., 13:6-20.

5.

In 2007 and 2008, the management structure at the PPG facility consisted of Harris as the highest-level Exel employee, with one Operations Manager below him, and below the Operations Manager were three supervisors who managed the group leads and associates. Harris Dep., 32:11-33:3.

6.

A lead position is a layer between the associates and the supervisors that

executes the directions and instructions given by the supervisor. Harris Dep., 32:11-33:15.

7.

Travis began working at Exel's PPG facility in November 2005. See Deposition of Contrice Travis ("Travis Dep."), 12:9-16, cited portions of which are attached to the Response as Exhibit "C".

8.

Travis started as a tasker and was moved to a group lead position in 2006. Travis Dep., 49:11-23.

9.

In June 2007, Harris announced to the staff at the PPG facility that James Kenneth Teal ("Teal") was moving from Operations Supervisor to Inventory Control Supervisor. Travis Dep., 82:7-17.82:21-83:21.

10.

Shortly thereafter, Travis began working with Teal as the Inventory Control Lead. Travis Dep., 46:5-11; 77:9-15.

11.

At the time when Teal was made Inventory Control Supervisor, Harris told Teal that he would not promote Travis to the Inventory Control Supervisor position

because he "did not want to put a woman in that position." See Deposition of James Kenneth Teal ("Teal Dep."), 71:8-21, cited portions of which are attached to the Response as Exhibit "D".

12.

Harris later told Teal that he did not want to put a woman in any management position. Teal Dep., 72:15-73:11.

13.

Travis was not considered for openings for supervisor positions in 2007 and early 2008. Travis Dep., 84:25-85:8; Harris Dep. 93:10-94:13; 96:5-97:19; 100:15-23.

14.

In 2007, Travis complained to Marie Murphy in Human Resources that Harris would not make her a supervisor because she is a woman. Travis Dep., 131:25-132:14.

15.

Travis also complained to Franklin Hudson in Human Resources that she felt she was being overlooked for promotions by Harris. Travis Dep., 133:5-134:9.

16.

Hudson advised Travis to look into transferring to another facility. Travis

Dep., 133:5-134:9.

17.

Because she felt like Harris was continually passing her over for supervisor positions, in 2008 Travis began looking for another job with more opportunity. Travis Dep., 116:15-30; see also Affidavit of Contrice Travis, ¶¶ 7-8, which is attached to the Response as Exhibit "E".

18.

In May 2008, Teal was promoted to Operations Manager, leaving his position as Inventory Control Supervisor. Teal Dep., 22:21-23:2; see also Exhibit "F" to the Response.

19.

Harris announced the promotion to the staff at the PPG facility in a memorandum on May 29, 2008. Harris Dep., 114:22-115:16; see also Exhibit "F" to the Response.

20.

Harris stated that Teal "has been promoted through the management ranks as operations supervisor, training supervisor, inventory management supervisor, systems 'super user' and special projects supervisor." See Exhibit "F" to the Response.

21.

In May or June 2008, Harris told Travis that Exel was going to fill Teal's position (the "Open Position"). Harris Dep., 57:11-58:6; 162:10-21.

22.

Travis showed an interest in the Open Position and asked Harris "are we going to have an inventory supervisor, I'm interested in doing that." Harris Dep., 57:11-58:6.

23.

Harris told her that Exel would be hiring an Operations Supervisor, not an Inventory Control Supervisor. Harris Dep., 57:20-58:6; 162:10-21; Travis Dep., 122:15-22.

24.

Travis made it clear to Harris that she wanted to be the Inventory Control Supervisor. Harris Dep., 57:11-58:6; 162:10-21.

25.

Harris told Travis that the Inventory Control Supervisor position did not exist. Harris Dep., 57:11-58:6; 163:13-18.

26.

Travis' immediate supervisor, Teal, believed that Travis should have been promoted to replace him in his old position of Inventory Control Supervisor because of her experience and knowledge in the inventory area. Teal Dep., 84:4-16.

27.

Travis knew the Inventory Control Supervisor position as well or better than Teal did. Teal Dep., 110:3-22.

28.

Travis also knew the operating systems better than anyone in the PPG facility. See Deposition of Donald Crankshaw, Jr. ("Crankshaw Dep."), 26:16-24, cited portions of which are attached to the Response as Exhibit "G".

29.

Harris admits that Travis was very knowledgeable about the PPG inventory processes. Harris Dep., 47:22-48:11.

30.

The hiring of supervisors is Harris' responsibility and he has the final say regarding who is hired for those positions. Harris Dep., 43:18-23.

31.

Harris is responsible for and has the final decision-making authority to make

promotions. Harris Dep., 44:2-19.

32.

Exel employees being laid off have priority to be considered for openings at other facilities (the "Layoff Policy"), but they have to submit an internal application and interview with the General Manager of the new facility. See Deposition of Franklin Hudson ("Hudson Dep."), 41:12-42:5; 58:18-59:12, cited portions of which are attached to the Response as Exhibit "H"; see also Deposition of Lisa B. Guydon as the Rule 30(b)(6) Representative of Exel, Inc. ("Guydon Dep."), 240:9-19, cited portions of which are attached to the Response as Exhibit "I".

33.

General Managers have total discretion as to whether to hire the laid off employee for the open position. Hudson Dep., 41:12-42:5; 58:18-59:12; Guydon Dep., 240:9-19.

34.

If the General Manager does not hire the laid off employee, then the job would be open to other internal and external candidates. Guydon Dep., 252:2-18.

35.

After Teal was promoted in May 2008, Exel posted the opening to fill the

Open Position on or about June 19, 2008. See Exhibit "J" to the Response; Harris Dep., 87:5-24.

36.

Exel received five applications through this posting. See Exhibit "K" to the Response.

37.

Travis did not apply for the Open Position because Harris told her that he was not hiring for the Inventory Control Supervisor position. Harris Dep., 57:110-58:6; Travis Dep., 122:15-22; Travis Aff., ¶ 11.

38.

Harris did not know at the time he discussed the Open Position with Travis that Pooler would qualify under Exel's Layoff Policy. See Exhibit "M" to the Response, p. 9.

39.

In June 2008, Pooler was called in to work on a Saturday and met with Franklin Hudson, an Exel Human Resources representative, and Michael Blose, the general manager of the Hawaiian Tropic facility. Deposition of Michel Pooler ("Pooler Dep."), 13:2-18; 19:13-20:17; 21:14-20, cited portions of which are attached to the Response as Exhibit "L".

40.

Pooler was told that his position was being eliminated, but that there was an Inventory Supervisor position coming open at the PPG facility. Pooler Dep., 20:4-17; 22:19-24; 52:19-25.

41.

Blose threatened Pooler that if he told anyone that they were giving him the Open Position, then the position would not be available. Pooler Dep., 13:2-17; 19:17-20:17; 53:1-10; 64:2-24.

42.

Pooler was told to keep his mouth shut, keep his phone on, and "just hang tight". Pooler Dep., 52:19.

43.

Pooler was told that "if it doesn't work out, then call Franklin Hudson" to discuss separation and severance. Pooler Dep., 52:14-25.

44.

Lisa Williams, the female Inventory Supervisor at the Hawaiian Tropic facility, was still working at the Hawaiian Tropic facility when he was offered the Open Position. Pooler Dep., 19:17-20:17.

45.

Williams was also laid off. Pooler Dep., 20:13-17; 28:9-12.

46.

Williams was not referred to Harris for consideration for the Open Position. Harris Dep., 74:5-75:3.

47.

Williams was not transferred to another location. Pooler Dep., 20:18.

48.

Pooler did not fill out the internal application that is required for a transfer or submit a resume for the Open Position. Pooler Dep., 20:23-25; 21:1-13; Hudson Dep., 58:18-59:12; Guydon Dep., 240:9-19.

49.

Harris interviewed Pooler for ten minutes in early July 2008, a few days before he started work, and decided to hire him to replace Teal. Harris Dep., 75:21-76:7; Pooler Dep., 21:4-13.

50.

After Pooler was hired to replace Teal, Harris told Travis that he would not make her a supervisor at the PPG facility. Travis Dep., 117:6-21.

51.

Travis resigned in late July 2008 to take another job. Travis Dep., 16:14-22.

52.

Pooler was made the Inventory Control Supervisor immediately after Travis left Exel. Pooler Dep., 13:13-15:11; Travis Dep., 15:4-10; Teal Dep., 40:4-7.

53.

Pooler started working at the PPG facility in early July 2008 as a supervisor over the first shift. Pooler Dep., 13:2-18.

54.

After four days as supervisor over the first shift, Harris moved Pooler to the second shift. Pooler Dep., 13:21-14:8.

55.

Harris told Pooler that it did not seem like he was too familiar with supervising the operations of the staff, and Pooler agreed. Pooler Dep., 13:24-14:8.

56.

The shift supervisor position Pooler held at the PPG facility was "completely different" than the position he held at the Hawaiian Tropic facility. Pooler Dep., 16:24-17:1.

57.

Pooler told Harris and Teal that he was lost and he was "looking stupid". Pooler Dep., 14:9-15:5.

58.

Harris told Pooler to train with Travis in inventory the majority of his time. Pooler Dep., 14:9-15:5.

59.

All of the training Pooler received at the PPG facility was from Travis. Pooler Dep., 25:1-8.

60.

Travis trained Pooler in the inventory area and in EMIS and PKMS, the two operating systems used at the PPG facility. Pooler Dep., 17:2-19; 32:25-33:20.

61.

Pooler was just "floating" the first few weeks at the PPG facility. Pooler Dep., 15:1-11; 25:9-17.

62.

According to Pooler, "Dave said, Well why don't you keep on training with Contrice . . . [t]hen the next thing I know, she's leaving . . . then I was brought in to Dave's office. Then now I'm inventory supervisor." Pooler Dep., 15:3-11.

63.

Pooler was then in charge of inventory and the other supervisor, Donald Crankshaw, supervised the operations. Crankshaw Dep., 33:10-34:8.

64.

Pooler remained as Inventory Control Supervisor until his separation from Exel in January 2009. Pooler Dep., 48:7-14.

65.

When Pooler left, Crankshaw took over the inventory responsibilities and he is now called the Inventory Control Supervisor. See Exhibits "N" and "O" to the Response; Crankshaw Dep., 13:15-14:11.

66.

Harris did not know if Pooler was a shift supervisor at his former facility when he hired him for the Open Position. Harris Dep., 120:25-122:23.

67.

Pooler never managed any employees at the PPG facility. Pooler Dep., 24:9-17; 44:19-22.

68.

When Pooler took over as Inventory Control Supervisor, he also took over Travis' role and performed the duties and responsibilities that she had been

performing. Pooler Dep., 55:5-10.

69.

When asked if Travis was replaced by anyone, Pooler responded, "Me". Pooler Dep., 72:23-25.

70.

Travis knew more about the Inventory Control Supervisor position than Pooler did by a "hundred percent". Pooler Dep., 33:18-25.

71.

Pooler believed that Travis was more qualified than he was for the Inventory Control Supervisor position and "absolutely" had a better understanding of the position. Pooler Dep., 54:22-55:4.

72.

Teal was Inventory Control Supervisor when he was promoted to Operations Manger and replaced by Pooler. Teal Dep., 20:22-25.

73.

Pooler became the Inventory Control Supervisor when he replaced Teal. Pooler 15:6-11; 17:2-8.

74.

When Pooler was laid off as part of a reduction in force on January 15, 2009,

Harris provided him with a separation letter he drafted in which he identified Pooler as "Exel/PPG Inventory Management Supervisor." See Exhibit "P" to the Response.

75.

In this letter, Harris states, "This workforce reduction affects your position as an Exel/PPG Inventory Management Supervisor." See Exhibit "P" to the Response.

76.

Harris also lauded Pooler for his "contribution in inventory management". See Exhibit "P" to the Response.

77.

Exel identified Pooler's job title as "Inventory Control Sup." when it filled out documentation related to his unemployment claim. See Exhibit "Q" to the Response, p. 2.

79.

As recently as February 2011, Crankshaw was identified by his supervisor, Dan Bair, as "Inventory Control Supervisor" in performance write-ups he received. Crankshaw Dep., 42:21-43:10; 44:10-23; Exhibits "N" and "O" to the Response.

Respectfully submitted, this 9th day of December, 2011.

                                                   <u>s/Steven A. Wagner</u>
                                                   Steven A. Wagner
                                                   Georgia Bar No. 000529
                                                 EEOC - Atlanta District Office
                                                 100 Alabama St., SW, Suite 4R30
                                                 Atlanta, Georgia 30303
                                                 Telephone:  (404) 562-6897
                                                 Facsimile:  (404) 562-6905
                                                 E-mail: steven.wagner@eeoc.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,  )<br><br>Plaintiff, and  )<br><br>CONTRICE TRAVIS,  )<br><br>Plaintiff-Intervenor,  )<br><br>v.  )<br><br>EXEL INC.,  )<br><br>Defendant.  ) | CIVIL ACTION<br>FILE NO.: 1:10-CV-03132-SCJ-ECS |

## **CERTIFICATION OF COMPLIANCE**

Pursuant to Local Rule 7.1D, counsel certifies that this statement of additional material facts was prepared using Times New Roman 14-point font.

This 9th day of December, 2011.

>s/Steven A. Wagner
Steven A. Wagner
Georgia Bar No. 000529

>EEOC - Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
Telephone: (404) 562-6897
Facsimile: (404) 562-6905
E-mail: steven.wagner@eeoc.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, and | ) ) | |
| CONTRICE TRAVIS, | ) ) | CIVIL ACTION FILE NO.:  1:10-CV-03132-SCJ-ECS |
| Plaintiff-Intervenor, | ) ) | |
| v. | ) ) | |
| EXEL INC., | ) ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S STATEMENT OF ADDITIONAL MATERIAL FACTS THAT PRESENT A GENUINE ISSUE TO BE TRIED by filing the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record:

David R. Kresser, Esq.
*Counsel for Defendant*

Rudjard M. Hayes, Esq.
*Counsel for Plaintff-Intervenor*

This 9th day of December, 2011.

                                              s/Steven A. Wagner
                                              Steven A. Wagner
                                              Georgia Bar No. 000529

                                              EEOC - Atlanta District Office
                                              100 Alabama St., SW, Suite 4R30
                                              Atlanta, Georgia 30303
                                              Telephone:  (404) 562-6897
                                              Facsimile:  (404) 562-6905
                                              E-mail: steven.wagner@eeoc.gov