# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) | |
| Plaintiff, and | ) ) | |
| and | ) ) | |
| CONTRICE TRAVIS, | ) | |
| Plaintiff-Intervenor, | ) ) | CIVIL ACTION FILE NO. 1:10-CV-03132-SCJ-ECS |
| v. | ) ) | |
| EXEL, INC., | ) | |
| Defendant. | ) | |

## PLAINTIFF-INTERVENOR'S REPLY TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff-Intervenor Contrice Travis ("Ms. Travis") submits this Response to Defendant's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment and respectfully shows this Court as follows:

**GENERAL OBJECTIONS:** Any admissions made by Plaintiff-Intervenor in these responses are made *solely* for the purposes of responding to the Motion for Summary Judgment by the Defendant. Moreover, where necessary to provide a more comprehensive and accurate picture of the incident which is the subject of this action, Plaintiff-Intervenor has made references to additional factual material,

either in a direct response to the Defendant's Statement, or in Plaintiff-Intervenor's Further Statement of Material Facts.

## I. THE PARTIES

1. Exel provides supply chain management for customers in a wide range of industries, including manufacturing and retail industries. (Harris Aff., ¶ 2.)

*Response:* No response.

2. Exel maintains a campus of approximately 10 distribution facilities in the Fairburn, Georgia area that each service different Exel customers. (Harris Dep., pp. 13, 32, 83; Harris. Aff., ¶ 3.)

*Response:* No response.

3. The Terminus Drive facility on the Fairburn campus services Exel customer Pittsburg Paint & Glass (hereinafter "PP&G facility"). (Travis Dep., p. 50; Harris Dep., p. 13; Harris Aff., 4.)

*Response:* Plaintiff-Intervenor admits this statement insofar as the Terminus Drive facility on the Fairburn campus services Exel customer Pittsburg Paint & Glass. Plaintiff-Intervenor denies this statement to the extent that it can be inferred that the Terminus Drive facility on the Fairburn campus is the only Exel facility which services Pittsburg Paint & Glass. Defendant has facilities that are responsible for servicing Pittsburg Paint & Glass in both Fontana, California (the

"Fontana PP&G facility") and Byhalia, Mississippi (the "Byhalia PP&G facility"). (Travis Dep., p. 106.)

> 4. In 2007 and 2008, the supervisory hierarchy for Exel's PP&G facility was as follows: no more than three Operations Supervisors reported to one Operations Manager who then reported to one General Manager, who was the highest ranking person at the site. (Travis Dep., pp. 72-73, 77; Harris Dep., p. 32; Hudson Dep., p. 68.)

*Response:* Plaintiff-Intervenor admits this statement insofar as the statement indicates that, at all times relevant to this action, the PP&G facility's hierarchy consisted of three Supervisors, who reported to one Operations Manager, who reported to one General Manager, who was the highest-ranking individual onsite.

However, Plaintiff-Intervenor denies this statement insofar as it indicates that the three Supervisors at the PP&G facility were "Operations" Supervisors. Rather, the PP&G facility had three Supervisors, two of whom were responsible for operational work, including shift management, and one of whom was the "Inventory" Supervisor. (Harris Dep., pp. 123, 165; Travis Dep., pp. 77, 82-83; Guydon Dep., p. 242; Exs. 5, 12, 21, 41, 42.)

> 5. David Harris became the General Manager of Exel's PP&G facility in November 2006. (Travis Dep., p. 78; Harris Dep., pp. 13-14, 16; Harris Aff., ¶ 6.)

*Response:* No response.

6.  Plaintiff Contrice Travis worked at Exel's PP&G facility from November 2005 through July 2008. (Travis Dep., pp. 15, 33-34, 39, 50; Exs. 5, 7.)

*Response:* No response.

7.  During her employment with Exel, Travis was a non-exempt employee paid on an hourly basis. (Travis Dep., p. 53.)

*Response:* Plaintiff-Intervenor admits this statement insofar that the statement indicates Travis was paid on an hourly basis as a non-exempt employee. Plaintiff-Intervenor denies this statement to the extent that Travis, on multiple occasions, worked as a supervisor. (Travis Dep., pp. 93, 109-110.)

## II. THE PREFERENTIAL TRANSFER PRACTICE AT THE FAIRBURN, GEORGIA CAMPUS

8.  Exel has a preferential transfer practice covering exempt job vacancies at its various facilities on the Fairburn, Georgia campus. (Travis Dep., p. 100; Harris Aff., ¶¶ 8-10; Harris Dep., pp. 75-77; Hudson Dep., pp. 37-38, 41-42; Guydon Dep., pp. 224-225.)

*Response:* Plaintiff-Intervenor objects to this statement as Exel has not produced any evidence showing the existence of the "preferential transfer practice" at the PP&G facility. Subject to said objection, Plaintiff-Intervenor admits that

- 4 -

Exel states they have a "preferential transfer practice." Plaintiff-Intervenor denies this statement to the extent that it infers the "preferential transfer practice" was a policy in place at the PP&G facility. Rather the "preferential transfer practice" was just that, a "*practice*" open to subjectivity. (Harris Dep., pp. 41-42, 58-59; Guydon Dep., p. 240.)

> 9.   Under the preferential transfer practice, Exel seeks to place exempt employees who are being laid off because of a facility closure and/or workforce reduction on the Fairburn, Georgia campus into vacant positions on the campus for which they are qualified. (Travis Dep., p. 100; Harris Aff., ¶ 8; Harris Dep., p. 75-77; Hudson Dep., pp. 37-38, 41-42; Guydon Dep., pp. 224-225, 228, 251-252; Murphy Dep., pp. 45-46.)

*Response:* Plaintiff-Intervenor admits this statement insofar as under the alleged "preferential transfer practice" Defendant seeks to place employees who are being laid off due to facility for closure and/or workforce reduction on the Fairburn, Georgia campus into vacant positions on the campus for which they are qualified. Plaintiff-Intervenor denies this statement insofar as it implies that the alleged "preferential transfer practice" was used to fill the 2008 Supervisor position which is the subject of this action. (Hudson Dep., pp. 63-64; Pooler Dep.,

pp. 13, 20, 22, 52, 53, 62-64.)[1]  (Harris Dep., pp. 57, 70, 87, 139-140, 143, 162; Travis Dep., pp. 137-138.)[2] (*See also* Plaintiff-Intervenor's Response to Statement No. 8.)

### III. SELECTION OF THE JUNE 2008 OPERATIONS SUPERVISOR POSITION

10.   General Manager Harris completed an IRC to fill a vacant Operations Supervisor position at Exel's PP&G facility in June 2008. (Travis Dep., pp. 95-96; Hudson Dep., p. 51, Ex. 6; Harris Dep., pp. 70, 76, 79, 87, 139-140, Ex. 6; Harris Aff., ¶ 10.)

*Response:* Plaintiff-Intervenor objects to this statement in that Travis never made such an admission and the testimony cited by Defendant does not support such a statement. Subject to said objection, Plaintiff-Intervenor admits this statement insofar as it indicates that Harris completed a form to fill a vacant supervisor position at Defendant's PP&G facility in 2008. Plaintiff-Intervenor admits this statement insofar as it indicates that Harris was responsible for filling out a vacancy for a Supervisor position, and was responsible for including the job title of the open position in said vacancy.

---

[1] Showing that Pooler did not submit an application or resume for the 2008 Supervisor position at the PP&G facility.
[2] Showing that the 2008 Supervisor position at the PP&G facility was not posted.

Plaintiff-Intervenor denies this statement insofar as it indicates the 2008 Supervisor position was for an "Operations" Supervisor position. Plaintiff-Intervenor further responds that the 2008 Supervisor position at the PP&G facility was for an "Inventory" Supervisor position. (Harris Dep., pp. 57,165 Ex. 6; Hudson Dep., pp. 51, 72, Ex. 6; Travis Dep., pp.77, 82-83, 95-96, 137-138; *see also* Plaintiff-Intervenor's Response to Statement No. 4.)

11. Human resources approved the IRC for the vacant June 2008 Supervisor position. (Hudson Dep., p. 31-33; Harris Dep., pp. 70, 83; Harris Aff., ¶ 10.)

*Response:* Plaintiff-Intervenor admits this statement insofar as it indicates that Defendant's human resource department approved the IRC submitted by Harris for a vacant 2008 Supervisor position. Plaintiff-Intervenor denies this statement insofar as it indicates that Defendant's human resources department could alter or amend the job posting submitted to it by Harris for the 2008 Supervisor position. Rather, Harris was responsible for creating the job posting, including inputting the job title of the open position in the job posting; Human Resources was only responsible for forwarding the vacancy request to Exel's Ohio headquarters so said posting could automatically post to Exel's internet site, Exel.com. (Hudson Dep., p. 34; Murphy Dep., p. 12.)

12.     The June 2008 IRC is attached to Harris' deposition transcript as Exhibit 6. (Harris Dep., pp. 70, 76, 79, 87, 139-140, Ex. 6.)

*Response:* No response.

13.     The IRC approval process automatically posted the June 2008 job vacancy on the Exel.com internet site. (Hudson Dep., pp. 24-29, 31-34; Harris Dep., pp. 70-71, 86-87; Harris Aff., ¶ 7; Guydon Dep., p. 221.)

*Response:* No response.

14.     Travis did not apply for the vacant June 2008 Supervisor position. (Travis Dep., p. 96; Guydon Dep., p. 234.)

*Response:* Plaintiff-Intervenor denies this statement insofar as the opening for the "Inventory" Supervisor position at the PP&G facility was not posted. (See Plaintiff-Intervenor's Response to Statement No. 10). Plaintiff-Intervenor further denies this statement as Travis did apply for the 2008 Supervisor position, as Travis had a direct, in-person conversation with Harris (the hiring manager) in which Travis requested that Harris consider Travis for the 2008 Supervisor position at the PP&G facility. (Harris Dep., 57, 58, 143, 162; Travis Dep., 98, 121-122; Affidavit of Contrice Travis, attached to Plaintiff-Intervenor's Response as *Exhibit A*.) Further, Pooler did not complete an application for the 2008

Supervisor position, yet was considered to have applied by his expression of interest. (Hudson Dep., p. 60; Pooler Dep., pp. 20-21, 64.)[3]

15. Michael Pooler[4] was selected for layoff due to workforce reductions at Exel's Hawaiian Tropic facility on the Fairburn, Georgia campus. (Harris Dep., pp. 79-81, 83; Harris Aff., ¶ 10; Pooler Dep., pp. 8, 12, 21-22; Hudson Dep., pp. 59-60; Harris Aff., ¶ 6.)

***Response:*** Plaintiff-Intervenor objects to this statement as vague and confusing in that said statement does not indicate the dates on which Pooler was selected for layoff, which is the most vital piece of information in light of Defendant's grounds for summary judgment. Specifically, there is no evidence as to when Pooler was laid off from Defendant's Hawaiian Tropic facility and/or whether he was laid off from Defendant's Hawaiian Tropic facility prior to or after Harris became aware of Travis' request to be considered for the 2008 Supervisor position at the PP&G facility. Further, Pooler was not only "selected" for layoff,

---

[3] Similarly, Harris was not required to submit an application when he was promoted from Operations Manager to Operations Supervisor at the PP&G facility. (Harris Dep., p. 16.)

[4] No individual named "Michael" Pooler who was employed by Defendant at any time relevant to this action. Plaintiff-Intervenor admits that the Defendant did employ an individual named "Michel" Pooler who was ultimately selected to fill the 2008 Supervisor position at the PP&G facility. Accordingly, Plaintiff-Intervenor will respond to the Defendant's Statement of Undisputed Facts under the explicit condition that any and all references to "Michael Pooler" or to "Pooler" refer to "Michel Pooler."

but was in fact laid off by Defendant prior to his hiring at the PP&G facility in July, 2008. (Pooler Dep., pp. 8, 21-22.)

Subject to said objection, Plaintiff-Intervenor admits that Pooler was selected for layoff, at some point in time, due to workforce reductions at Defendant's Hawaiian Tropic facility, located on the Fairburn, Georgia campus.

> 16. Human resources only referred Pooler as a candidate for consideration to Harris for the vacant June 2008 Supervisor position. (Harris Dep., pp. 74-75, 80-81; Harris Aff., ¶ 10.)

*Response:* Plaintiff-Intervenor admits this statement insofar as Pooler was the only candidate referred to Harris by Defendant's human resources in reference to the 2008 Supervisor position. Plaintiff-Intervenor denies this statement insofar as it indicates that Pooler was the only individual whom Harris was aware had submitted an application for the 2008 Supervisor position as Harris was also aware of Travis' request to be considered for the 2008 Supervisor position at the PP&G facility. (Harris Dep., pp. 57, 58, 142, 162; Travis Dep., pp. 98, 121-122.)

> 17. Harris interviewed Pooler and obtained recommendations from Pooler's managers (Mike Blose and Mark Phillips) at Exel's Hawaiian Tropic facility. (Harris Dep., pp. 18, 79-80; Pooler Dep., pp. 12, 21; Harris Aff., ¶ 10.)

*Response:* Plaintiff-Intervenor objects to this statement as there is no evidence showing when Pooler was interviewed and whether said interview

occurred after Travis informed Harris of her desire to be considered for the 2008 Supervisor position.

> 18.   Harris determined that Pooler was "absolutely" qualified for the open Supervisor position. (Harris Dep., pp. 75-76, 125-126, 130, Exs. 13, 14, 16; Pooler Dep., pp. 60, 65, Ex. 2; Harris Aff., ¶ 10.)

*Response:* Plaintiff-Intervenor admits this statement insofar as it indicates that Harris subjectively determined that Pooler was qualified for the 2008 Supervisor position. Plaintiff-Intervenor denies this statement insofar as Pooler was not qualified for the 2008 Supervisor position at the PP&G facility. (Pooler Dep., pp. 15, 17.)

> 19.   Harris transferred Pooler to fill the vacant Supervisor position. (Harris Dep., pp. 75-76, 125-126, 130 Exs. 13, 14, 16; Pooler Dep., pp. 60, 75; Harris Aff., ¶ 10.)

*Response:* Plaintiff-Intervenor admits that Harris hired Pooler for the 2008 Supervisor position after Pooler was laid off from Exel's Hawaiian Tropic facility. Plaintiff-Intervenor denies that Pooler was "transferred" into the 2008 Supervisor position at the PP&G facility; rather Pooler was *hired* for the 2008 Supervisor position at the PP&G facility following his layoff from the Hawaiian Tropic facility. . (Pooler Dep., p. 8, 21-22, 69.) Plaintiff-Intervenor also denies this

statement to the extent Defendant is relying on this statement to assert that Pooler was transferred pursuant to the alleged "preferential transfer practice," as Pooler admits he never applied to the 2008 Supervisor position. (See Plaintiff-Intervenor's Response to Statement No. 9.)

>   20.   Harris sent a letter to Pooler confirming the transfer dated July 2, 2008. (Harris Dep., pp. 126, 128, Ex. 14.)

*Response:* Plaintiff-Intervenor admits this statement insofar as Harris sent Pooler a letter dated July 2, 2008. Plaintiff-Intervenor denies this statement insofar as Pooler was not "transferred" into the position prior to being terminated from the Hawaiian Tropic facility. (Pooler Dep., pp. 8, 21-22.) Plaintiff-Intervenor denies this statement to the extent it indicates Pooler was placed in the 2008 Supervisor position pursuant to the Defendant's alleged "preferential transfer practice." (See Plaintiff-Intervenor's Response to Statement No. 19.)

>   21.   A copy of the July 2, 2008 transfer letter to Pooler is attached to the Harris deposition as Exhibit 14. (Harris Dep., pp. 126, 128, Ex. 14.)

*Response:* No response.

Respectfully submitted this 9th day of December, 2011.

/s/ Rudjard M. Hayes
Rudjard M. Hayes
Georgia Bar No. 340329
rudjard@theconsensusgroup.com

SANCHEZ HAYES & ASSOCIATES, LLC
1015 Tyrone Road, Suite 620
Tyrone, Georgia 30290
(770) 692-5020 *telephone*
(770) 692-5030 *facsimile*
*COUNSEL FOR PLAINTIFF-INTERVENOR*