**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| and | : | |
| | : | |
| CONTRICE TRAVIS, | : | |
| | : | |
| Plaintiff-Intervenor, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | FILE NO. 1:10-CV-03132-SCJ-ECS |
| EXEL INC., | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

Defendant Exel, Inc. ("Exel") hereby files this Reply in Support of its

Motion for Summary Judgment.  (Dkt. #46.)

**I.     INTRODUCTION.**

In their duplicative summary judgment opposition papers (Dkt. # 59, 66), the

Equal Employment Opportunity Commission ("EEOC") and Plaintiff-Intervenor

Contrice Travis ("Travis") (collectively the "Plaintiffs") have failed to come

forward with any admissible evidence or legal arguments to demonstrate that a

material fact dispute exists or to rebut the showing made by Exel that it is entitled to summary judgment on the single failure-to-promote claim as a matter of controlling law.

## II.   EXEL IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW.

With their arguments in response to Exel's well-supported Motion for Summary Judgment, Plaintiffs would have the Court believe that Exel engaged in a complex web of deceits, name changes and illegitimate transfers simply to prevent Travis from being selected for the June 2008 vacant Supervisor position, but that is not the case.  Rather this case is quite simple.

Travis undisputedly knew there was a vacant Supervisor position available in June 2008.  (Travis 95-96; Harris 76, 79, 86-87, Ex. 6; Hudson 51, Ex. 6.)  In fact, her own supervisor's promotion created the vacancy.  (*Id.*)  Teal's position needed to be "backfilled," and Harris completed an IRC to fill that vacant position. (Travis 95-96; Hudson 51, Ex. 6; Harris 70, 76, 79, 87, 139-140, Ex. 6; Harris Aff., ¶ 10.)  Human resources approved the IRC for the vacancy, which automatically posted the vacancy on the Exel internet site.  (Hudson 31-33; Harris 70-71, 83; Harris Aff., ¶ 10.)  A number of candidates (all male) applied for that position. (Harris 136, Ex. 18; Guydon 248, 250-252; Hudson 54-56. Ex. 18.)   However,

-2-

Travis admits she did not submit an application or apply for the position, and there is no record evidence that Harris told Travis not to apply or prevented her from applying in any way.  (Travis 96; Guydon 234.)   This alone defeats Plaintiffs' claim.  *Williams v. Waste Management, Inc.*, 411 Fed. Appx. 226, 228 (11th Cir. 2011).

However, even if Travis had applied, her application would have been in vain because the undisputed evidence shows that **no one** was promoted to the June 2008 Supervisor position.  Rather, pursuant to the Company's preferential transfer practice, Exel transferred a supervisor (Pooler) into the vacant position from a nearby Exel facility that was reducing operations and none of the applicants (all of whom were male) were considered.  (Travis 100; Harris 75-81, 125-126, Exs. 13, 14; Harris Aff., ¶¶ 8, 10.)   Specifically, Pooler was being laid off in connection with operation reductions from the nearby Exel Hawaiian Tropic facility at the Fairburn campus.  (Harris 79-81; Pooler 8, 12, 21-22; Hudson 59-60.)   That Hawaiian Tropic facility was literally down the street on the Exel campus.  (Harris Aff. ¶¶ 3, 5.)   The Exel campus is not functionally different from one large warehousing operation containing separate customer specific departments.

Pursuant to the preferential transfer practice at the Fairburn campus, Pooler was contacted to determine his interest in the vacant Supervisor position at Exel's

PP&G facility.  (Harris 79-81; Pooler pp. 8, 12, 20-22; Hudson 59-60.)  Pooler was the only candidate referred to Harris by human resources for consideration.  (Harris 75-76,  80-81;  Guydon 251-252.)    Harris  interviewed  Pooler  and  obtained recommendations  from  his  management  team.    (Harris  18,  79-80;  Pooler  21.) Harris testified that Pooler "absolutely" was qualified for the vacant position and transferred him over.  (Harris 75-76, 79-81, 125-126, 130 Exs. 13, 14, 16.)

The  preferential  transfer  practice  is  a  legitimate  reason  to  select  an individual to fill a vacant position.[1]  The practice was applied across the Fairburn campus  years  before  this  at-issue  position  became  vacant.    (Harris  70-76,  83; Guydon 226-227; Harris Aff., ¶ 10.)  It is also logical.  Otherwise, Exel would lose a qualified supervisor at a nearby facility that is subject to layoff through no fault of the employee.  If Exel instead promoted an internal candidate, like Travis, Exel would  then  have  to  backfill  her  position  and  advertise,  hire  and  train  a  new employee for that position.  The Company would be charged unemployment paid

---

[1]  Plaintiffs  spend  much  of  their  reply  briefs  arguing  that  Pooler,  Teal  and Crankshaw believed that Travis was the most qualified person to fill the Supervisor position (and, correspondingly, that Pooler was not as qualified).  However, these arguments  are  completely  immaterial.    The  beliefs  of  non-decision  makers  are irrelevant, and Exel has never argued that Travis was not qualified for the Supervisor  position  because  Harris  did  not  reach  the  merits  of  anyone's qualifications outside of the preferential transfer policy.  Furthermore, the fact that

to the laid off supervisor.   The preferential transfer practice reduces costs and administrative time, and it saves a qualified employee's job from elimination.

According to their summary judgment response, Plaintiffs would, instead, have had Exel disregard their preferential transfer practice, reject a qualified lateral transfer in favor of an employee loosing his job, consider all internal and external applicants regardless of whether they submitted an application, and select Travis for the position because other (non-decision making) employees thought she was qualified.   This, of course, could have resulted in a reverse discrimination claim, but, at least, Travis would have had the position.   This result is not required, and there is no justification for voiding Exel's preferential transfer policy that saves jobs and money.   The lateral transfer of Pooler from a nearby facility on the Fairburn campus is no different than an employer transferring a supervisor from one shift or department to another at a single employment site during a workforce reduction.   This practice is a legitimate, non-discriminatory reason for not promoting Travis into the position, and Plaintiffs' efforts to show this reason is a pretext for intentional gender discrimination fail.   This case must be dismissed on summary judgment.

---

Harris has "veto" power to reject the preferential transfer candidate does not change the legitimate nature of the policy or Pooler's selection in this instance.

-5-

### III.   PLAINTIFFS' NOMENCLATURE ARGUMENT AS TO THE TITLE OF THE JUNE 2008 SUPERVISOR POSITION IS A RED HERRING.

The crux of Plaintiffs' response to summary judgment relies on the alleged disputed nomenclature of the position at issue.  Specifically, Travis claims that after Teal (her own direct supervisor) was promoted to Operations Manager, she showed an interest in the position by asking Harris "are we going to have an inventory supervisor, I'm interested in doing that," and that Harris responded that "we're not going to have an inventory supervisor position, its an operations supervisor position,"[2] which Travis avows deterred her from applying.  (Travis 95-96; Harris 57-58, 162.)  Plaintiffs' use this nomenclature argument as to the title of the vacancy to excuse Travis' failure to apply for the position at issue (a required element of her *prima facie* case) and to somehow show pretext because Harris referred to Teal and Pooler as "inventory" supervisors at different points throughout their careers.  However, this "name game" as to the proper title of the position is completely immaterial for purposes of summary judgment.

---

[2] Plaintiffs also argue that Harris then responded that the inventory supervisor position did not exist.  However, the record does not support this assertion, as Travis attributed this statement to Harris in 2007, which is completely unrelated in time or scope to the June 2008 decision at issue.  (Travis 121, 137.)

A.     The nomenclature of the vacant position does not establish pretext.

Initially, Travis claims that Harris' reference to the position as an Operations Supervisor (and not an inventory supervisor) in her discussion with him  about the position establishes pretext because Harris referred to Teal as an "inventory" supervisor at different points prior to his promotion to Operations Manager and referred to Pooler as an "inventory" supervisor at some point after his transfer to the PP&G facility.  This argument is baseless.

Both Travis and the EEOC **admit** that the supervisory hierarchy at the PP&G facility was three Supervisors reporting to one Operations Manager who then reported to one General Manager.  (Travis 72-73, 77; Harris 32, 88.)  Teal's promotion to Operations Manager **left only one of the three Supervisor positions vacant**.  (Travis 15, 78, 95-96; Harris 42-43, 74-87, 93, 96, 102, 107, 133, 188.)  It is undisputed that Travis knew that the Supervisor position was available, regardless of the name of the position,[3] and she certainly knew the nature of the position, as her own Supervisor held it.  (Travis 77, 95-96; Harris 57-58.)  Harris testified that the only official Supervisor job title at the PP&G facility for these

---

[3] Without any supporting evidence, Travis suggests that she was intentionally sent to Fontana, California for a period during the job positing to prevent her from learning about it, but Travis undoubtedly knew about the posting – again, a red herring.  (Travis 77, 95-96; Harris 57-58.)

three Supervisor positions was "Operations Supervisor." (Harris 165, Aff. ¶ 10.) It is also undisputed that Harris, indeed, posted the job as an Operations Supervisor and that Exel received applications for the Operations Supervisor position. (Harris 136, Exs. 6, 18.) That alone should end the analysis of Plaintiffs' nomenclature façade.

Nevertheless, it is undisputed that Harris and others referred to the PP&G Supervisors by the tasks or shifts (e.g., First Shift Supervisor, Second Shift Supervisor, Training Supervisor) to which they were assigned based on the then existing needs in the facility. (Teal 24-29, Ex. 32.) This does not change the fact that there were only three (3) Supervisor positions at the PP&G facility and the official Company title for all three was "Operations Supervisor." For instance, in the written announcement that Teal was being promoted from his Supervisor position to the Operations Manager position, he was described as an "operations supervisor, training supervisor, inventory management supervisor, systems 'super user' and special service projects supervisor." (Teal 24-29, Ex. 32.) But, as Teal confirmed, these were simply designations. (*Id.*) These designations involved no paperwork noting any change in his official job title, Teal did not consider any of these designations to be a promotion, (and they were not), his pay did not increase (or decrease) with these designations, no IRC job vacancy was created or posted,

Teal did not apply for the designations, he was not replacing anyone with these changes in designations, and he did not change his reporting structure with these designations. (*Id.*) These designations/duties were simply descriptions of his job duties as a PP&G Supervisor. (*Id.*; *see also* Travis 51 – changing shift designations.) These many designations given to a Supervisor at the PP&G facility do not change the fact that the position at issue was, indeed, one of the three "Operations Supervisor" positions that was posted and filled during Harris' time as General Manager. Teal's job title did not change until he was promoted from one of the three Supervisor positions at PP&G to the open Operations Manager position, leaving his former Supervisor position at issue here open.

Additionally, and perhaps most importantly, Plaintiffs have absolutely no evidence whatsoever to suggest that Harris' use the term "Operations Supervisor" for the position at issue during his discussion with Travis was in any way tied to a gender-based discriminatory animus. *Roper v. City of Foley*, 2005 WL 1925868, *4 (S.D. Ala. Aug. 11, 2005) (neither the clarity of the job announcement or the applicant's understanding of the position discredited the legitimate reason for the nonselection of the applicant), *affirmed by Roper v. City of Foley*, 177 Fed. Appx. 40, 50 (11th Cir. 2006). As such, Plaintiffs' rank speculation is insufficient to establish pretext.

-9-

B.   <u>Harris' discussion with Travis about the at-issue supervisor position is not an adverse employment action.</u>

Plaintiffs attempt to cast Travis' discussion with Harris about the Supervisor position as some sort of a "pre-rejection" in an effort to establish pretext. With this argument, the EEOC and Travis, in reality, are asking the Court to consider this discussion the adverse action at issue to artificially alter the timing of the selection decision to shoehorn their pretext arguments into a record that does not support them. Plaintiffs' argument is not supported by the facts or the law in this case.

First, the record is void of any evidence to support the allegation that Harris discouraged Travis from applying during his discussion with her about the position. There is no evidence that during this discussion that Harris told Travis she was not qualified, that she was not selected, that she was rejected, or that she need not apply. In fact, there is no record evidence that he actually discouraged her from applying in any way. Rather, Travis made her own decision not to pursue the at-issue Supervisor position, as she did twice before when PP&G Supervisor positions were open in February 2007 and March 2008. (Travis 76-77, 89-90, 93, 96.) Thus, the facts do not support Plaintiffs' argument.

Second, an adverse employment decision is "an **ultimate** employment decision, such as discharge or failure to hire, or other conduct that 'alters the

employee's compensation, terms, conditions or privileges of employment, deprives him or her or employment opportunities, or adversely affects his or her status as an employee.'" *Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000)(emphasis added). Harris' discussion with Travis, even taking Travis' version as true for purposes of this motion, does not rise to the level of an adverse action when her nonselection did not occur until Pooler was transferred into the position. *Grimsley v. Marshalls of MA, Inc.*, 284 Fed. Appx. 604, 608 (11th Cir. 2008) (an employee's subjective perception is not controlling); *Shannon v. Bellsouth Telecommunications, Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) ("not everything that makes an employee unhappy is an actionable adverse action"). Another Court in this Circuit considered a similar issue and held,

> the court cannot say that [the decision-maker's] failure to make [plaintiff] aware of the opening deprived her of any employment opportunity. She was aware of the opening, and independently decided she was not qualified and did not apply. There is no causal relationship between [the decision-maker's] failure to bring the position specially to her attention and the constriction of future employment opportunities. [Plaintiff] herself is responsible.

*Bonham v. Regions Mortg., Inc.*, 129 F. Supp. 2d 1315, 1329 (M.D. Ala. 2001).

The same analysis applies here. Travis, now, cannot retroactively coin this discussion a rejection when she is responsible for not applying for the Supervisor position that she knew was open and available. For this same reason, Plaintiffs'

assertion that Pooler's selection pursuant to the preferential transfer practice is pretextual because Harris did not know that Pooler would qualify under the policy at the time of his discussion with Travis also fails.[4]  Again, the undisputed facts establish that Travis was not "pre-rejected" simply because she and Harris had a discussion about the position where he called it an Operations Supervisor.

## IV.   PLAINTIFFS' ONLY ARGUMENTS ATTEMPTING TO LINK GENDER TO THE DECISION AT ISSUE FAIL.

The record in this case is devoid of any evidence of gender discrimination related to filling the June 2008 Supervisor position, and Plaintiffs' attempt to wedge immaterial and conclusory allegations related to gender into the decision falls woefully short.  In this vein, Plaintiffs argue that pretext is shown because 1) Teal alleges that Harris made comments about not putting a women in a management position; 2) there are no women in management at the PP&G facility;

---

[4] The EEOC and Travis also claim that at the time of Pooler's selection, Harris did not know if Pooler was a "first shift supervisor," to imply that Harris did not know if Pooler qualified for the preferential transfer policy.  This is trickery upon the Court as Harris did believe that Pooler was an "Operations Supervisor" at the time of the transfer.  (Harris 75-78.)  It is undisputed that Pooler in fact supervised numerous employees at the Hawaiian Tropic facility (Pooler 57) and Harris considered Pooler "absolutely" qualified to replace Teal.  (Harris 75-76, 79-81, 125-126, 130 Exs. 13, 14, 16.)  It is also undisputed that Pooler was a preferential transfer candidate.

and 3) Lisa Williams, another supervisor at the Hawaiian Tropic, was not transferred to the PP&G facility.  Each of these arguments is meritless.

A.    The comments attributed to Harris by Teal are stale, stray remarks insufficient to defeat summary judgment.

It is undisputed that, after Travis voluntarily resigned from Exel, Teal was terminated as a result of a sexual harassment charge asserted against him, and that prior to his termination, he had been counseled for another allegation of inappropriate conduct lodged against him by another female.  (Teal 47-51, Ex. 33-34.)  Teal, of course, denies these allegations, but admits that he and his wife were angry about the situation generally and with Harris in particular.  (Teal 52-53.)[5] In addition, Teal admits that he was well aware of the Company's policy prohibiting sex discrimination and that he had a responsibility to report any discrimination he discovered to his supervisor or to human resources.  Teal further advised that he never reported any sex discrimination at any time during his employment with Exel because he never discovered any.  (Teal 31-32.)

---

[5] In fact, an email from Teal's email address was sent to Harris on September 13, 2010, which states, "DAVE I NEED TO WORK so if you are going to say anything negative for a reference I NEED TO KNOW DAMMIT I DO NOT DESERVE THIS." (Teal p. 54-56, Ex. 35.)

Against this factual backdrop, Teal now asserts that when he was selected for a Supervisor position in 2007,[6] Harris said that he "did not want to put a women in that position" and then sometime later Harris said that he did not want to put a women in a management position.  (Teal 70-75.)  Teal admittedly never reported these alleged comments to human resources or otherwise as he was obligated to do under Company policy.  (Teal 74.)  Even taking these alleged and suspect comments from a discharged employee with an axe to grind against Harris as true for purposes of summary judgment, they do not defeat summary judgment. These comments were allegedly made over a year before the at-issue Supervisor position was filled and are wholly unrelated to the at-issue employment claim. Remarks that are isolated and unrelated to the challenged employment decision are insufficient to establish pretext. *Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002) ("Because [Rojas's supervisor's] alleged comment [to another female employee that she did not deserve her job because she was a woman] was . . . an isolated comment, unrelated to the decision to fire Rojas, it, alone, is insufficient to

---

[6] Teal was not selected for a supervisor position at any time in 2007.  Teal was a Supervisor at PP&G since before Harris became General Manager in November 2006 and was a Supervisor before Travis was hired in November 2005.  (Teal 10-11.)  The "2007" Supervisor position is simply one of the changes in the nomenclature used to describe Teal's supervisory responsibilities as explained in Section III above.

-14-

establish a material fact on pretext."); *Floyd v. Federal Exp. Corp.*, 423 Fed. Appx. 924, 932 (11th Cir. 2011) (As circumstantial evidence, an alleged comment was non-probative as to pretext because it was made almost a year before the decision at issue an too remote from the decision); *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1427 (11th Cir. 1998) (comment remote in time from adverse action was nothing more than a stray remark); *Ritchie v. Ind. Steel, Inc.*, 426 Fed. Appx. 867, 873 (11th Cir. 2011.)  These alleged comments must be disregarded.

> B.   The argument that no other women were in management at the PP&G facility is meaningless.

Plaintiffs tout that no other members of management at the PP&G facility were women.   Travis has no competent record evidence to make this statistic meaningful.   First, while Travis was employed, Harris only filled two other Supervisor positions at the facility.  (Travis 15, 78; Harris 42-43, 74-76, 84-85, 93, 96, 102, 107, 133, 188, Exs. 5, 6, 8, 10, 13, 17, 18; Harris Aff., ¶¶ 6, 10; Guydon 226-227.)  It is undisputed that Travis did not apply for these positions (or any other position for that matter) (Travis 76-77, 89-90, 93, 96), and these Supervisor positions were filled pursuant to the same preferential transfer policy used to select Pooler.  (Harris 70-76, 83; Guydon 226-227; Harris Aff., ¶ 10.)  Additionally, there is no evidence whatsoever in the record that any females were either referred or in

the applicant pool for the management positions Harris filled.   *See Evans v. McClain of Georgia, Inc.*, 131 F.3d 957 (11th Cir. 1997) ("Statistics without an analytical foundation are virtually meaningless."); *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 (11th Cir. 1994) ("Anecdotal information is no substitute for meaningful statistical analysis."); *Lee v. GTE of Fla., Inc.*, 226 F.3d 1249, 1255 n.2 (11th Cir. 2000) (noting that the plaintiff's data that the defendant has not hired many women into a particular position was "statistically meaningless" where she failed to show the total number of individuals who applied or the relative qualifications of the applicants.)  In short, the asserted "statistical evidence" is not accurate or complete, nor is it probative of any discriminatory practice.

   C.   Plaintiffs' speculation as to Lisa Williams' employment must be disregarded.

   Plaintiffs contend that Exel's reason for selecting Pooler (i.e., the preferential transfer practice) is pretextual because Lisa Williams, who, according to Pooler only, was another Supervisor at the Hawaiian Tropic Facility, and she was not referred to Harris as a candidate for the Supervisor position at PP&G.  In support of this argument, Plaintiffs point only to Pooler's conjecture that he must of have been told to keep his layoff/transfer process confidential so that Williams

-16-

would not learn of it.  Plaintiffs are grasping at straws, as these allegations reflect nothing but blatant speculation.

While Pooler testified that Williams was laid off from the Hawaiian Tropic facility at some point, there is no other evidence in the record as to the circumstances of her employment separation or if she even  was separated.  There is simply no evidence that even if Williams was separated that she not offered a transfer to another facility, that she did not voluntarily resign, or that she was not offered a transfer to the PP&G facility, but declined it.[7]  Likewise, Plaintiffs failed to ask any corporate representative why Pooler was asked to keep his layoff and potential transfer confidential.  There is simply no admissible record evidence as to the reason.  Rather, Plaintiffs rely on Pooler's unsupported assumption that he was to keep his layoff and potential transfer confidential in order to keep this information from Williams and perhaps others.  From this baseless assumption, Plaintiffs make the unsupported leap that Williams was also a candidate for the PP&G facility that was ultimately rejected because of her gender.  These are not

---

[7] Williams was not deposed.  No Exel manager with personnel knowledge of Williams' alleged employment separation was deposed or other inquiry made by Plaintiffs into the circumstances of Williams' employment.  Williams' issue was not the topic of the EEOC's extensive Rule 30(b)(6) inquiries.  Plaintiffs did not even ask for Williams' personnel file.  Plaintiffs are desperate to find a woman

-17-

the facts of this case, and they cannot support an argument for pretext.   *Holifield v. Reno*, 115 F.3d  1555 (11ᵗʰ Cir. 1997) (assertions "without supporting evidence are insufficient to withstand summary judgment."); *Otu v. Papa John's USA*, 400 F. Supp. 2d 1315, 1335 (N.D. Ga. 2005)("Plaintiff's subjective perceptions and conclusory allegations unsupported by record evidence do not create genuine issues of material fact in order to withstand summary judgment."); *Hilburn v. Murata Elec. North Am., Inc.*, 181 F.3d 1220, 1228 (11ᵗʰ Cir. 1999) ("conclusory allegations without specific supporting facts have no probative value").

## V.   PLAINTIFFS HAVE FAILED TO ESTABLISH FUTILITY TO EXCUSE TRAVIS' FAILURE TO APPLY.

In a last ditch effort to establish a claim, Plaintiffs admit that Travis failed to apply, but that she is excused from doing so pursuant to the futile gesture doctrine. To establish the futile gesture doctrine, a plaintiff must show that she had a real and present interest in the job for which the employer was seeking applications; and (2) that she would have applied for the job but effectively was deterred from doing so by the employer's discriminatory practices. *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1274 (11th Cir. 2002).   Even assuming that Travis can establish that she had a real and present interest in the job, Travis cannot show that

allegedly mistreated and rely on raw speculation that Williams somehow fits the

she was deterred from applying by the "deeply entrenched discriminatory practices" that had "been so successful as to totally deter job applications from members of minority groups." *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 367-368 (1977).

Plaintiffs again circularly argue that Travis can establish futility based on her discussion with Harris which deterred her from applying, her alleged prior expression of interest in positions, and because were no women in management positions. All of these same tired arguments that Defendant has show to be meritless above, fail here too. Harris did not prevent Travis from applying. (Harris 57-58.) Travis never applied for any other management position at the PP&G facility, and any other positions or alleged discriminatory actions have been expressly excluded from consideration by this Court. (*See* Court Order dated April 25, 2011, at pp. 3-5, Doc. 22.) The fact that no women were in the handful of management positions at the PP&G facility when Plaintiff worked there is absolutely meaningless. However, even taking all these arguments as true, they still do not establish futility because they do not show systematic, widespread discriminatory practices to deter entire minatory groups from applying, and Travis' individual circumstances for not applying do even enter the futility analysis. In

---

bill.

*Williams*, 411 Fed. Appx. at 228, the Eleventh Circuit rejected an argument nearly identical to Plaintiffs'.   As such, the EEOC and Travis cannot establish the required application element of a *prima facie* promotion claim.

## VI.   CONCLUSION.

For these reasons and the reasons demonstrated in the summary judgment motion and supporting papers filed by Exel, this case should be dismissed with prejudice in its entirety.

FONT CERTIFICATION

Pursuant to LR 7.1D, NDGa, the undersigned hereby certifies that

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY**

**JUDGMENT** was prepared using Times New Roman (14 point), as approved by

LR 5.1B, NDGa.

This 26th day of January, 2012.

Respectfully submitted,

*/s/David R. Kresser*
David R. Kresser
Georgia Bar No. 429615
dkresser@laborlawyers.com
Terri R. Stewart
Georgia Bar No. 244624
tstewart@laborlawyers.com
FISHER & PHILLIPS LLP
1075 Peachtree Street, NE
Suite 3500
Atlanta, Georgia  30309
(404) 231-1400
(404) 240-4249 Facsimile

COUNSEL FOR DEFENDANT

1563077.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of January, 2012, I electronically filed **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court and the attorney of record using the CM/ECF system:

> Ottrell L. Ferrell
> Robert K. Dawkins
> Sairalina Montesino
> Steven A. Wagner
> Equal Employment Opportunity Commission – ATL
> Atlanta District Office – Legal Unit
> 100 Alabama Street, S.W.
> 4R30 Atlanta Federal Center
> Atlanta, GA  30303-8704
>
> Rudjard M. Hayes
> Sanchez Hayes & Associates, LLC
> 1015 Tyrone Road
> Suite 620
> Tyrone, GA  30902

This 26th day of January, 2012.

/s/ David R. Kresser
David R. Kresser