IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION,<br><br>Plaintiff, and<br><br>CONTRICE TRAVIS,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>EXEL INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION<br>FILE NO.:  1:10-CV-03132-SCJ-ECS |

## PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S OBJECTION TO THE REPORT AND RECOMMENDATION RECOMMENDING THAT EXEL INC.'S MOTION FOR SUMMARY JUDGMENT BE GRANTED

COMES NOW Plaintiff, the Equal Employment Opportunity Commission (the "EEOC"), and files this, its Objection to the Report and Recommendation of the Magistrate Judge recommending that Exel Inc.'s Motion for Summary Judgment be Granted (the "Report"), pursuant to Rule 72(b)(2), Federal Rules of Civil Procedure and Local Rule 72.1B., United States District Court, Northern District of Georgia. The EEOC objects to the recommendation because, *inter alia*, genuine questions of material fact exist as to the liability of Defendant Exel Inc.

("Exel") and, as such, the Report should NOT be adopted.

The EEOC asserts a claim for sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, on behalf of Contrice Travis ("Travis"), who was denied a promotion because of her gender. The undisputed and disputed material facts in the record support the denial of the Motion and, therefore, the Report should not be adopted.

**A.     A Brief Outline of the Facts of the Case.**

A brief summary of the facts in the record demonstrate that there are questions of material fact for a jury to resolve:

- Davis Harris ("Harris") was the General Manger of the PPG facility, where he had total authority and discretion to promote and hire his employees. Harris Dep., 13:6-20; 43:18-23; 44:2-19, cited portions of which are attached as Exhibit "B"[1].

- Harris had Exel post a job opening for an Operations Supervisor position to fill the position formerly held by James Kenneth Teal ("Teal") whose title was Inventory Control Supervisor. <u>See</u> Exhibit "J"; Harris Dep., 87:5-24, cited portions of which are attached as Exhibit "D".

---

[1] The exhibits cited herein are the exhibits to the EEOC's Response in Opposition to Exel Inc.'s Motion for Summary Judgment, docket number 59.

- Teal, Travis' immediate supervisor, believed that Travis should have been promoted to replace him in his old position of Inventory Control Supervisor because of her experience and knowledge in the inventory area. Teal Dep., 84:4-16.  Travis knew the Inventory Control Supervisor position as well or better than Teal did. Teal Dep., 110:3-22.  Harris admits Travis was very knowledgeable about the inventory processes. Harris Dep., 47:22-48:11.

- Nevertheless, Harris told Teal that he would not promote Travis to the Inventory Control Supervisor position because he "did not want to put a woman in that position." Teal Dep., 71:8-21.

- Harris later told Teal that he did not want to put a woman in *any* management position. Teal Dep., 72:15-73:11.

- Travis asked Harris if he was hiring for the Inventory Control Supervisor position because she was interested in that position.  Harris not only told her no, but misrepresented to Travis that the position did not even exist. Travis Dep., 122:15-22; Harris Dep., 57:11-58:6; 162:10-21; 163:13-18.

- Because Harris had told Travis that he was *not* going to hire an Inventory Control Supervisor and, instead, was going to hire an Operations Supervisor, Travis did not apply for that job posting (the "Open Position").  Harris Dep., 57:110-58:6; 162:10-21; Travis Dep., 122:15-22; Exhibit "E", ¶ 11.

- Michael Pooler ("Pooler") was being laid off from another Exel facility and his general manager and an HR representative told him they had a job opening for him as an **Inventory Control Supervisor** (*not an Operations Supervisor*) at the PPG facility. Pooler Dep., 20:4-17; 22:19-24; 52:19-25, cited portions of which are attached as Exhibit "L".

- The managers told Pooler that the General Manager of the PPG facility, which was Harris, would call him, and that **if he told anyone about the position, he would not get it**. Pooler Dep., 13:2-17; 19:17-20:17; 53:1-10.

- Harris hired Pooler for the Open Position, even though he did not apply for it. Pooler Dep., 20:23-25; Hudson Dep., 58:18-59:12, cited portions of which are attached as Exhibit "H".

- When the inexperienced Pooler started working at the PPG facility, he was just "floating" the first few weeks and he told Harris that he was lost and he was "looking stupid." Pooler Dep., 14:9-15:11; 25:9-17.

- Per Harris' instruction, Pooler spent the majority of his work time getting training from Travis in inventory. Pooler Dep., 14:9-15:5.

- After Pooler was hired into the PPG facility, Harris told Travis that he will never make her a supervisor, so she decided to leave Exel. Travis Dep., 117:6-21.  This was consistent with his comment to Teal that he would not

4

put a woman in *any* management position. Teal Dep., 72:15-73:11.

- Immediately after Travis left Exel, Pooler's title was formally converted to Inventory Control Supervisor, which is the exact position Exel admits Travis wanted to apply for, but which Harris denied even existed. Pooler Dep., 13:13-15:11; Travis Dep., 15:4-10; Teal Dep., 40:4-7.

- According to Pooler, "Dave [Harris] said, Well why don't you keep on training with Contrice [Travis] . . . **[t]hen the next thing I know, she's leaving . . . then I was brought in to Dave's office.   Then now I'm inventory supervisor."** Pooler Dep., 15:3-11.  When asked if Travis was replaced by anyone, Pooler responded, "Me". Pooler Dep., 72:23-25.

In sum, Harris had sole decision making authority and total discretion as to whom to hire.  He clearly revealed his sex animus by stating he would not promote Travis to Inventory Control Supervisor because he did not want a woman in that position.   Harris, knowing that Travis was interested in the Inventory Control Supervisor position, told her that the position did not exist, and then seemingly posted a different position.  This, in effect, duped Travis into not applying for it. Then Harris hired Pooler and converted his job title to Inventory Control Supervisor immediately after Travis resigned. Pooler Dep., 13:13-15:11.  If a jury believes these witnesses and decides that this actually happened, it could very

easily conclude that Travis was subjected to sex discrimination.

**B.     The Magistrate Judge Erred in Concluding that the Plaintiffs Cannot Establish a *Prima Facie* Case.**

To establish a *prima facie* case of discrimination in a failure to promote case requires the following elements: (1) the plaintiff is a member of a protected minority; (2) she was qualified for and applied for the promotion; (3) she was rejected despite these qualifications; and (4) other equally or less qualified employees who were not members of the protected minority were promoted. See Wu v. Thomas, 847 F.2d 1480, 1483-84 (11th Cir. 1988).  For purposes of the Motion, Exel conceded all of the elements of the *prima facie* case except the application requirement.

In the Report, the Magistrate Judge found that the EEOC and Travis could not demonstrate a *prima facie* case of sex discrimination for failure to promote because Travis cannot satisfy the application element of the *prima facie* case.  The Report is wrong for at least two reasons:

(1)     The disputed and undisputed material facts in the record show that there is sufficient evidence to satisfy the elements of the futile gesture doctrine, thus eliminating the need for Travis to have actually applied for the promotion; and

(2)     The Report erroneously concludes that as long as an employer does not engage in a vast conspiracy of systematic discrimination against females in

general, then it is impossible to satisfy the futile gesture doctrine.  However, the requirement for a systematic pattern of excluding women is irrelevant and inapplicable where, as here, Travis was directly tricked into not applying by the misrepresentations of the misogynistic decision maker.  If the Report is adopted, then employers like Exel are given a road map, and explicit court approval, as to how it can discriminate against a person in a failure to promote case: Lie about a job opening to keep the person you want to discriminate against from applying, hire whomever you want and then *convert* the position to the job you lied about.

**(1)    The Magistrate Judge gave inordinate and undue weight to the fact that Exel used a formal job announcement.**

There are two types of cases in the failure to apply area: (1) cases where the employer uses informal methods to announce job openings, such as word of mouth.  In these cases, the application component is satisfied if the employer merely had some reason to consider the employee for the position; and (2) cases in which the employer formally announces the job opening at issue.  Generally, in these cases the employee must apply for the position as opposed to merely expressing a general interest. See Report at 12.

The cases upon which the Magistrate Judge relies are cases in which the position filled was formally announced, but the plaintiff failed to apply.  The Magistrate Judge states as support for its holding that "Exel used formal

7

procedures to announce its open position, to which Travis admits she did not apply." <u>See</u> Report at 13.  The Magistrate Judge also states that "neither plaintiff disputes that Exel publicized the supervisor vacancy and provided a formal mechanism for applying." <u>See</u> Report at 14.  The EEOC objects to these findings as dispositive of whether the plaintiffs can establish a *prima facie* case.

Although the EEOC concedes that Exel formally announced an "*Operations Supervisor*" position, the entire crux of its argument is that Harris intentionally duped Travis into not applying by announcing, if in name only, a straw position he knew she did not want. The sex animus in his deception is not only revealed by his prior comments about keeping Travis (and other women) out of the Inventory Control Supervisor position, it is also revealed in his outright lie to Travis *that the position did not exist*.  The Defendant's own documents reveal that this is not true. <u>See</u> Exhibits "N", "O", "P", and "Q".  Instead of giving weight to the reason Travis did not apply – direct intervention and subterfuge by the decision-maker – the Magistrate Judge applies an overly mechanical approach to the *prima face* case without regard for the facts that suggest strong discriminatory intent.

Surprisingly, while the Report concludes that Travis' failure to apply renders her unable to establish a *prima facie* case, the fact that Pooler, the selectee, did not apply is found to be immaterial. <u>See</u> Report at 13.  The EEOC also objects to this

finding.  It is undisputed that Pooler also did not submit an application even though he, like Travis, was supposedly required to fill out an application. Pooler Dep., 20:23-25; Hudson Dep., 59:1-10.  This fact is highly material for two reasons. First, it demonstrates that submitting an application was *not* really a requirement. Second, it is inappropriate to fault Travis for not formally applying for the Open Position when Exel did not require the person it selected to submit a formal application.

Most importantly, the only reason Travis did not apply for the Open Position is because Harris told her Exel was not hiring for the Inventory Control Supervisor position and that the position did not exist, which excuses or satisfies the application requirement. See Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 365, 97 S. Ct. 1843, 1870 (1977)(holding that an employer's policy of discrimination can be communicated in subtle, but clear, ways, by *inter alia*, "responses to casual or tentative inquiries").  Because Pooler's job title was changed to Inventory Control Supervisor immediately after Travis left, there is a question of material fact as to whether Harris posted a different job title to intentionally dupe Travis into not applying.  If that is the case, the application element of the *prima facie* case must be deemed established.

**(2)    The Magistrate Judge was overly rigid in analyzing and applying the purpose for the application requirement.**

The Magistrate Judge further states in the Report that "[t]he purpose of requiring a Title VII plaintiff to have applied for the job is to eliminate one 'obvious nondiscriminatory reason: that the plaintiff was not offered the job because the company did not know he was interested.  By showing that he applied, the plaintiff shows that the employer knew he was interested in the job.'"  See Report at 13, quoting Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1133 (11th Cir. 1984).  The EEOC objects to this portion of the Report as well because Harris admits he knew that Travis was interested in the Inventory Control Supervisor job. Harris Dep., 57:11-58:6.  However, he lied to her and told her he was not filling that position. Harris Dep., 57:11-58:6; 162:10-21; 163:13-18.  There is no mystery here.  There is no lack of knowledge of the employer as to whether Travis was interested.  Harris is the person who made the decision to fill the Open Position and he admits that Travis was interested in and inquired about the position before it was posted, he just lied about the job title so she would not apply.[2]

The EEOC also objects to the portion of the Report in which the Magistrate

---

[2] The Magistrate Judge, in usurping the province of the jury, simply disregards the evidence of Harris' deception by concluding that [as a matter of law] no reasonable inference can be drawn that Harris intended to thwart Travis from applying.  See Report at 17.

Judge appears to contend that the futile gesture doctrine requires proof of a mass conspiracy that is company-wide. See Report at 17-21.  It does not.  The futile gesture doctrine requires that: (1) Travis had a real and present interest in the job for which Exel was seeking applications[3]; and (2) that she would have applied for the job but effectively was deterred from doing so by the employer's discriminatory practices. See E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1274 (11th Cir. 2002).  Ironically, the Report states that the futile gesture test is not met because plaintiffs "have not shown that Harris or any other Exel employee made…statements to discourage prospective applicants to other positions." See Report at 18.  The Magistrate Judge appears to require historical evidence that *other* females were discouraged from applying before Travis' failure to apply can be justified.  However, evidence of historical animus against women in general is irrelevant when there is evidence of specific efforts to discourage or thwart Travis in particular.[4]  Harris not only made statements about not promoting Travis to management based on her sex, he also took actions designed to discourage Travis

---

[3] The Magistrate Judge correctly notes that Exel does not contest whether Travis had a real and present interest in the job. See Report at 16.

[4] The Teamsters and Joe's Stone Crabs cases are applicable only where the plaintiff fails to apply based on the employer's historical treatment of the protected group or where the employer's reputation of discrimination has effectively chilled members of the group from applying. Int'l Bhd. of Teamsters, 431 U.S. 324, 97 S. Ct. 1843; Joe's Stone Crabs, 296 F.3d 1265.

from applying for the one position for which she was, arguably, the most qualified. He admits Travis asked whether he was going to fill the Inventory Control Supervisor position vacated by Teal, but explicitly he told her he was not. Harris Dep., 57:11-58:6; 162:10-21.  For that reason, Travis did not apply. Travis Aff., ¶ 11.  Harris then selected Pooler and, just weeks thereafter, upon Travis resignation, converted his job title to the position for which Travis wanted to apply - Inventory Control Supervisor. Pooler Dep., 13:13-15:11; Travis Dep., 15:4-10; Teal Dep., 40:4-7.

    The EEOC concurs with the Report's suggestion that this case bears greater similarity to Williams v. Alpharetta Transfer Station, LLC, No. 1:07-CV-1949-GET (N.D. Ga. June 15, 2010).  In Williams, the employer told the Plaintiff he could not apply for a promotion because the position had already been filled when, in fact, it had not.  The court held that the futility doctrine did not apply because there was no evidence that he was deterred from applying *because of discriminatory practices*. See Report at 19.  The EEOC objects to the finding in the Report that the "EEOC and Travis have pointed to no admissible evidence in the record to suggest that [Harris'] statement was part of a discriminatory practice." Id. To the contrary, practically every pertinent statement and action by Harris relative to the posting, selection *and conversion* of the position suggests it is part of a

discriminatory practice.  This evidence, when combined with Harris' admission that he would not select Travis for the Inventory Control Supervisor position *because of her sex*, or any other woman for that matter, the EEOC objects to the conclusion that it has produced no evidence of discrimination.[5]

Other courts, including in the Eleventh Circuit, have similarly held that the futile gesture doctrine does not require widespread systematic discrimination, but instead can be shown where an applicant is kept from applying by the employer's deceit.  In a recent case from the Middle District of Alabama, a female plaintiff was held to have satisfied the application requirement because she was lied to about the salary for an advertised position, which deterred her from applying.  See Rollins v. Alabama Comm. College System, 814 F. Supp. 2d 1250 (M.D. Ala. 2011).  In Rollins, the plaintiff employed by a college had asked the interim president on two different occasions what the advertised position would pay, and each time he assured her that it would pay no more than $55,000. Id. at 1270-1271.  Because the plaintiff did not want the position at that salary, which the interim

---

[5] See Teal Dep., 71:8-21.  Harris' discriminatory animus combined with evidence of his deception regarding the Open Position creates a question of fact as to whether a discriminatory reason more likely motivated Harris to not promote Travis.  See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) (holding that admission of qualification for position and evidence of animus by the decision maker was sufficient to deny summary judgment).

president testified he knew, she did not apply, even though she had the opportunity to apply. Id.  A male was ultimately hired for the position at a starting salary of $70,000. Id.  As a result, the Court held that the plaintiff had created a question of fact as to whether she was deterred from applying due to discrimination, which satisfied the application requirement of her *prima face* case. Id.

In another case, a Hispanic plaintiff was found to have satisfied the application requirement where she did not apply for two advertised positions where she was told by the decision maker that she would not be considered for either position. See Vargas v. Chubb Group of Ins. Cos., 2002 WL 31175233 (S.D.N.Y.). In fact, when the plaintiff was told that she did not have enough experience for a Human Resources Representative position, she "replied that she would be willing to become a Human Resources Trainee." Id. at *2.  The plaintiff was told that the position of Human Resources Trainee ***did not exist***. Id.  However, the employer promoted a non-Hispanic employee, who also did not have sufficient experience, and put her in the position of Human Resources Trainee, which is the position the Plaintiff was told did not exist. Id.  These facts were deemed sufficient to satisfy the application requirement under the futile gesture doctrine. Id.  The facts in the Vargas case are starkly similar to what Travis experienced when Harris told her the Inventory Control position did not exist. The futile gesture doctrine is not as strict

as the Magistrate Judge applied it.  Id.; see also Breneisen v. Motorola, Inc., 512 F.3d 972 (7th Cir. 2008)(employee was not required to have actually applied for employment benefits sought where employer specifically misled the employee into believing that she was not eligible for the benefits).

### (3)     The Magistrate Judge invaded the province of the jury.

In the Report, the Magistrate Judge goes too far and invades the province of the jury by stating that a jury could not infer discrimination from the facts in the record.  "Credibility determinations, the weighing of the evidence, and *the drawing of legitimate inferences from the facts are jury functions, not those of a judge*, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986)(emphasis added).  "The district court must not resolve factual disputes by weighing conflicting evidence, since it is the province of the jury to assess the probative value of the evidence." Lane v. Celotex Corp., 782 F.2d 1526, 1528 (11th Cir. 1986).  The EEOC objects to the Magistrate Judge's dismissal of the EEOC's argument, which is amply supported by the record, that Harris lied to Travis about the position for which he was hiring. See Report at 20-21.  The Report states:

> [T]he human resources request would have to have been part of
> Harris' deception, meaning that Harris publicly posted an opening for
> a job that was different than the one he was actually hiring for.  A jury
> would have to infer that Harris went to the effort of creating a posting
> for an operations supervisor, knowing that it would generate
> applications from people who thought they were applying to be
> operations supervisors, while he secretly intended to interview
> applications for the position of inventory supervisor.  A jury would
> have to further infer that Harris did all of this just to discourage Travis
> from applying for the job because of her sex, even though women,
> including Travis, clearly could have applied for the position Harris did
> post.  A reasonable jury could not follow the plaintiffs down this
> inferential rabbit hole.

See Report at 20-21.  No inference by the jury is even necessary because the record

evidence demonstrates that this is what happened.  Harris did post the position as

an Operations Supervisor. Harris Dep., 87:5-24.  While the Operations Supervisor

opening was pending, Pooler was told, in secrecy, *that the position that Harris*

*would fill was that of **Inventory Control Supervisor***.  Pooler Dep., 20:4-17; 22:19-

24; 52:19-25.  When Pooler started work at the PPG facility, he did not supervise

anyone and, instead, he trained *in inventory* with Travis. Pooler Dep., 14:9-15:11;

25:9-17.  Immediately after Travis left Exel, Harris converted Pooler's job title to

Inventory Control Supervisor. Pooler Dep., 13:13-15:11.  This is not some crazy

conspiracy theory; rather, these are the facts in the record. This would not be the

first time that an employer used a formal job hiring procedure as a pretext for

discrimination.  See Kimble v. Wasylyshyn, 2011 WL 4469612 (6th Cir.

16

2011)(Employer used a formal hiring process, including a panel of interviewers, but the Court found it was a cover for discrimination where the decision maker went to great lengths, even removing some of the basic experience requirements, to find a white applicant to hire instead of the African-American plaintiff).

Further, while the Magistrate Judge is rejecting a more than plausible inference that a jury could easily make, it ignores the fact that Exel cannot proffer any explanation for why Pooler sat around and did almost nothing after being hired to work at the PPG facility until Travis left and then his title was suddenly changed to Inventory Control Supervisor.  It also ignores the fact that Pooler was instructed by a general manager and HR representative to "keep [his] mouth shut" about his secret promotion to "*Inventory Control Supervisor*" while the Operations Supervisor opening was still pending. Pooler Dep., 20:4-17; 22:19-24; 52:19-25. Any reasonable fact finder could see through this ruse.[6]

**C.   Exel's Proffered Legitimate Non-Discriminatory Reason is a Pretext for Sex Discrimination.**

The Report addresses only whether the EEOC and Travis established a

---

[6] The Magistrate Judge expresses disbelief in the plaintiffs' argument because "the human resources request would have to have been part of Harris's deception." See Report at 20.  In effect, this implies that because the Magistrate Judge does not believe Harris would post an alternative position (if only in name) to thwart Travis, no reasonable jury would either.  This conclusion not only overlooks and/or compartmentalizes the totality of the evidence, it draws all reasonable inferences in favor of the moving party and invades the province of the jury.

*prima facie* case of discrimination.  Assuming that the District Court grants the EEOC's objection to the Report, the District Court should also find that Exel's proffered legitimate non-discriminatory reason is a pretext for sex discrimination.

Exel's proffered legitimate non-discriminatory reason for not promoting Travis is that it had a layoff procedure that gave preference to employees being laid off when job openings occurred.  Exel contends Pooler was selected by Harris because of this policy, not because of Travis' gender.  This reason is a pretext for discrimination for two reasons: (1) a discriminatory reason more likely motivated Harris to not promote Travis and deterred her from applying; and (2) the reason is unworthy of credence because there is no evidence that Harris even knew that Pooler was being laid off at the time Harris discriminated against Travis.

Exel admits for purposes of the Motion that Travis was qualified for the Operations Supervisor position.  Therefore, the evidence of Harris' discriminatory animus, that he would not put a woman in the Inventory Supervisor position or any management position and that he would never make Travis a supervisor, combined with the evidence of Harris' deception regarding the position for which he was really hiring, creates a question of fact as to whether a discriminatory reason more likely motivated Exel to not promote Travis. See <u>Wilson</u>, 376 F.3d at 1091 (holding that admission of qualification for position and evidence of animus by the

decision maker was sufficient to deny summary judgment).

In addition, the purported layoff procedure that Exel cites as the reason Pooler was selected by Harris is a red herring.  Harris admits that his discussion with Travis in which he told her that he was not hiring for the Inventory Control Supervisor position occurred before he even knew that Pooler would be referred to him under the purported layoff procedure. See Exhibit "M", top of p. 9; Harris Dep., 57:11-58:6.  In addition, Exel did not actually follow its purported layoff procedure because Pooler never submitted an application for the Operations Supervisor position, rather he was told by his supervisor to keep his mouth shut, keep his phone on, and "just hang tight" and someone would contact him about an Inventory Supervisor position. Pooler Dep., 20:23-25; 52:19.  Pooler was even threatened that if he told anyone that they were giving him the position, he would not get it. Pooler Dep., 53:1-10; 64:2-24. In addition, **Harris was not required to hire Pooler under the so-called layoff preference; rather he had total discretion as to whether to do so**. Hudson Dep., 41:12-42:5; 58:18-59:12; Guydon Dep., 240:9-19, cited portions of which are attached as Exhibit "I". Even if there was a purported layoff preference, Harris took actions to discriminate against Travis before he ever knew there were any candidates that would fall under that alleged procedure.  Also, the secrecy to which Pooler was sworn raises

19

questions at to the validity of the existence of the so-called preference. That is, if the policy existed, it apparently included a secrecy component, the violation of which renders one ineligible to participate.  This is nonsensical.

In sum, Harris' absolute discretion as to whether to hire or reject Pooler, combined with the evidence of Harris' discriminatory animus, Travis' superior knowledge of the job and Pooler's total lack of knowledge of the job's duties, and the secrecy surrounding Pooler's selection, demonstrates a question of fact as to whether the layoff procedure was the real reason Travis was not promoted or whether it is pretext for discrimination.

**D.**   **Conclusion**

For the foregoing reasons, the EEOC prays that the Report of the Magistrate Judge NOT be adopted, that Exel's Motion for Summary Judgment be DENIED, and that the EEOC have such other and further relief as is just and proper.

Respectfully submitted, this 10th day of September, 2012.

s/Steven A. Wagner
Steven A. Wagner
Georgia Bar No. 000529
EEOC - Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
Telephone:  (404) 562-6897
Facsimile:  (404) 562-6905
E-mail: steven.wagner@eeoc.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, and | ) ) | |
| CONTRICE TRAVIS, | ) ) | CIVIL ACTION FILE NO.:  1:10-CV-03132-SCJ-ECS |
| Plaintiff-Intervenor, | ) ) | |
| v. | ) ) | |
| EXEL INC., | ) ) | |
| Defendant. | ) | |

## CERTIFICATION OF COMPLIANCE

Pursuant to Local Rule 7.1D, counsel certifies that this response was prepared using Times New Roman 14-point font.

This 10th day of September, 2012.

s/Steven A. Wagner
Steven A. Wagner
Georgia Bar No. 000529

EEOC - Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
Telephone:  (404) 562-6897
Facsimile:  (404) 562-6905
E-mail:  steven.wagner@eeoc.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EQUAL EMPLOYMENT )
OPPORTUNITY COMMISSION, )
　 )
　　　　Plaintiff, and )
　 )
CONTRICE TRAVIS, )　　CIVIL ACTION
　 )　　FILE NO.:  1:10-CV-03132-SCJ-ECS
　　　　Plaintiff-Intervenor, )
　 )
v. )
　 )
EXEL INC., )
　 )
　　　　Defendant. )

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a copy of the foregoing **PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S OBJECTION TO THE REPORT AND RECOMMENDATION RECOMMENDING THAT EXEL INC.'S MOTION FOR SUMMARY JUDGMENT BE GRANTED**, by filing the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record:

David R. Kresser, Esq.
**_Counsel for Defendant_**

Rudjard M. Hayes, Esq.
**_Counsel for Plaintiff-Intervenor_**

This 10th day of September, 2012.


s/Steven A. Wagner
Steven A. Wagner
Georgia Bar No. 000529

EEOC - Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
Telephone:  (404) 562-6897
Facsimile:  (404) 562-6905
E-mail: steven.wagner@eeoc.gov