**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT** | : | |
| **OPPORTUNITY COMMISSION,** | : | |
| | : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : | **1:10-CV-3132-SCJ** |
| | : | |
| **and** | : | |
| | : | |
| **CONTRICE TRAVIS,** | : | |
| | : | |
| **Plaintiff-Intervenor,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **EXEL, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

## ORDER

This matter appears before the Court for consideration of the magistrate judge's August 24, 2012 Report and Recommendation ("R&R") [Doc. No. 76], in which The Honorable E. Clayton Scofield, III, United States Magistrate Judge, recommended that the Defendant's Motion for Summary Judgment [Doc. No. 46] be granted.

Plaintiff, Equal Employment Opportunity Commission ("EEOC"), brings an employment discrimination complaint on behalf of Plaintiff-Intervenor, Contrice Travis, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. and the Civil Right Act of 1866, 42 U.S.C. § 1981.  Doc. No. 1.[1]  Plaintiffs allege that Defendant

---

[1] Unless otherwise specified, the Court will refer to the EEOC and Ms. Travis collectively as "Plaintiffs."

Exel, Inc. (hereinafter "Exel" or "Defendant") denied Ms. Travis a promotion because of her gender.  The facts and procedural history of this case are set forth in the R&R and are fully incorporated herein by reference.

On September 10, 2012, Plaintiff and Plaintiff-Intervenor timely filed objections to the Report and Recommendation [Doc. No. 106].  Said objections are summarily as follows: the magistrate erred in concluding that Plaintiff cannot establish a prima facie case and invaded the province of the jury.  Doc. Nos. 78 and 79.

On September 24, 2012, Defendant filed a consolidated response to said objections.  Doc. No. 82.

When objections are filed, the Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72(b)(3).  After conducting this de novo review, the Court "may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  Additionally, the Court may "receive further evidence or recommit the matter to the magistrate judge with instructions."  Id.

After de novo review, the Court hereby adopts the factual background, procedural background, summary judgment standard, and Title VII framework language of the R&R [Doc. No. 76] and rejects the conclusions of law.  The relevant facts and the Court's conclusions of law are as follows.

AO 72A
(Rev.8/82)

## A. Factual Background

Exel is a supply chain management company, servicing customers throughout the world. [Pl's SMF ¶ 1]. In Fairburn, Georgia, Exel has a campus of ten (10) distribution facilities, each dedicated to a different customer. [Def's SMF ¶ 2]. One such facility serves Pittsburgh Paint & Glass (the "PP&G facility"). [Id. ¶ 3]. This case concerns events that occurred at the PP&G facility in 2008.

At all times relevant to this suit, the PP&G facility's organizational hierarchy, in order of superiority, consisted of one (1) general manager, one (1) operations manager, three (3) supervisors, various group leads, and several associates and other lower-level employees. [Pl-Int's SMF ¶ 2]. Travis joined the PP&G facility as a "tasker" in 2005. [Pl's SMF ¶¶ 7-8]. The following year, David Harris ("Harris") became the general manager. [Def's SMF ¶ 5].

In June 2007, Harris, who was also in charge of hiring and promotion decisions, moved James Kenneth Teal ("Teal") from operations supervisor to inventory control supervisor. [Pl's SMF ¶ 9]. Travis then worked underneath Teal as inventory control lead. [Id. ¶ 10].  At Teal's deposition, he testified that Harris told him he did not select Travis for inventory control supervisor because he "did not want to put a woman in

3

that position." [Teal Dep. at 71:8-15].[2] Teal also testified that, at other times, Harris told

him he did not want to put a woman in a management position. [Id. at 72:20-73:5].

In May 2008, Teal received a promotion to operations manager. [Ex. 11 to Harris

Dep.]. Harris announced this promotion to the staff in a memorandum dated May 29,

2008, which stated that Teal had been "promoted through the management ranks  as

operations supervisor, training supervisor, inventory management supervisor,

systems 'super user' and special service projects supervisor." [Id.].

---

[2]The Court recognizes that Teal is no longer employed by Exel and that Exel characterizes Teal as "a discharged employee with an axe to grind against Harris." Doc. No. 74, p. 14; Doc. No. 82, p. 4.  However, the Court does not make credibility determinations at summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986) (" Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether [the court] is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor.").

The Court also recognizes that Defendant argues that "Teal simply did not state in his affidavit or deposition that Harris said he did not want to put Travis in the at-issue job because she is a woman." Doc. No. 82, p. 4.  As indicated above, the Court accepts the deposition testimony as Harris told Teal that he did not want to put a woman in the Inventory Supervisor Position or management.  Whether Teal is to be believed is a credibility determination – that, as stated above, is not proper for this Court to make at summary judgment.

Defendant also asks the Court to consider Harris's alleged statement concerning not placing a woman in management as a remote, stale, stray, remark, insufficient to defeat summary judgment.  In support of its argument, Defendant cites Rojas v. Florida, 285 F. 3d 1339 (11th Cir. 2002).  In Rojas, the Eleventh Circuit held that a comment about a woman (who was not plaintiff) not deserving her job was isolated and unrelated to the challenged employment decision, not direct evidence of discrimination, but could "contribute to a circumstantial case for pretext."  Id. at 1343.  The Court finds that the alleged statement at issue here could contribute to Plaintiffs' circumstantial case.  The Court declines to disregard said statement.

After Teal's promotion, Travis and Harris discussed the supervisor vacancy, at which time Harris told Travis he would be filling Teal's former position. [Pl's SMF ¶ 21]. Harris further explained that he would be hiring an operations supervisor and not an inventory supervisor. [Id. ¶ 23]. Harris, in his deposition, testified that Travis told him she was interested in being inventory supervisor but not operations supervisor. [Harris Dep. at 57:12 - 58:6]. At Travis's deposition, she testified that she informed Harris she wanted to be considered for Teal's former position. [Travis Dep. at 122:15-22]. Travis also testified that when she asked if it were possible that there would be an opening for inventory supervisor, Harris responded, "No, it's not possible, it doesn't exist." [Id. at 121:16-19]; see also Travis Aff., Doc. No. 59-6, pp. 3 - 4, ¶¶ 9 - 11 ("In May or June 2008, David Harris told me that he would be hiring a supervisor to fill an open supervisor position at the PPG facility to replace Kenny Teal. I went to David Harris' office and told Harris that I wanted to be considered for the open Inventory Supervisor position . . . David Harris told me that the Inventory Supervisor position did not exist; therefore, I did not submit an application for the open position.").[3] Travis further testified that she searched for the vacancy on Exel's website (www.exel.com) but was unable to find it. [Id. at 138:3-10].

---

[3]Defendant argues that the record does not support this assertion [Doc. No. 82, p. 5, n. 6]. After review of the record, the Court is unable to uphold Defendant's argument. Additional review of the record shows that Harris also testified at his deposition that around May or June of 2008, after Kenny Teal was promoted to manager, Travis showed an interest in becoming an inventory supervisor and he "let her know that we were not going to be adding a position like that." Doc. No. 53 at 57:11 -25].

On June 19, 2008, Harris submitted a job request form to Exel's human resources department for a first shift "operations supervisor." [Def's SMF ¶ 10; Ex. 6 to Harris Dep.]. This form stated that the position was a "replacement vacancy" for "Kenny Teal." [Ex. 6 to Harris Dep.]. The first bullet point of the job description noted the responsibility to "[e]nsure warehouse integrity by timely and accurate receiving, picking, shipping, and inventory management." [Id.]. Additional duties followed this bullet point. After human resources approved the request, the vacancy automatically posted to Exel's website. [Def's SMF ¶ 13; Pl-Int's SMF ¶ 19]. Five (5) candidates applied. [Pl's SMF ¶ 36]. Because Harris had told Travis that he was not hiring an inventory control supervisor, [Id. ¶ 37], Travis did not submit an application. [Id.; Def's SMF ¶ 14].

Even though Exel received five (5) applications for the vacant operations supervisor position, the first and only candidate human resources referred to Harris was Michel Pooler, a male employee from Exel's Hawaiian Tropic facility. [Def's SMF ¶ 16]. Pooler had recently been selected for layoff due to workforce reductions at that facility. [Id. ¶ 15]. When the human resources manager and the general manager of the Hawaiian Tropic facility informed Pooler of his layoff, they also told him that the PP&G facility had an opening for an inventory supervisor. [Pl's SMF ¶¶ 39-40; Pl-Int's SMF ¶¶ 30 - 31]. They instructed Pooler not to discuss the vacancy with anyone, but to go home and wait for a call. [Pl-Int's SMF ¶ 32]. At his deposition, Pooler testified

AO 72A
(Rev.8/82)

that they further advised him the position would not be available if he told anyone about it. [Pooler Dep. at 53:3-7, 64:6-10].

In filling vacancies for exempt employees, such as supervisors, Exel gives preference to internal candidates laid-off from its other distribution facilities. [Def's SMF ¶¶ 8-9; Pl-Int's SMF ¶¶ 22-23; Hudson Dep. at 41:12-16; Guydon Dep. at 224:19-225:5]. After an internal candidate applies, human resources reviews that application prior to those of other applicants. [Pl-Int's SMF ¶ 23]. If qualified, the internal candidate then interviews with the general manager at the facility with the vacancy. [Id. ¶ 24; Hudson Dep. at 38:6-12]. The general manager ultimately decides whether to hire the internal candidate or to look to other applicants. [Pl's SMF ¶¶ 33-34].

Pooler, however, testified in his deposition that he did not submit an internal application for the supervisor position at the PP&G facility. [Pooler Dep. at 20:23-21:3]. Nevertheless, following the referral by human resources, Harris interviewed Pooler, obtained recommendations from Pooler's managers, and found him to be qualified. [Def's SMF ¶¶ 17-18]. On July 2, 2008, Harris offered Pooler the job, which he accepted. [Pl-Int's SMF ¶ 36].[4]

---

[4]Pooler, in his deposition, also testified that Lisa Williams, another supervisor at the Hawaiian Tropic facility, was laid-off and yet not transferred to another Exel facility. [Pooler Dep. at 20:7- 19]. The Court agrees with Exel that the plaintiffs have failed to establish Pooler's personal knowledge of the circumstances of Williams's employment, separation, or transfer. [Doc. 74 at 17]. Furthermore, none of the parties deposed Williams herself; none posed questions about her to any deponent who would have had such personal knowledge;

After hiring Pooler, Harris told Travis that he would not make her a supervisor at the PP&G facility. [Pl's SMF ¶ 50].

Pooler worked as the PP&G facility's first shift supervisor for four (4) days before Harris moved him to the second shift. [Pl's SMF ¶¶ 53-54; Pl-Int's SMF ¶ 39]. All of Pooler's training occurred under Travis, who trained him in inventory and in using the facility's operating systems. [Pl's SMF ¶¶ 59-60]. Travis continued training Pooler until her resignation in late July 2008. [Id. ¶ 51]. After Travis resigned, Pooler's title became inventory supervisor. [Pl-Int's SMF ¶ 43; Pooler Dep. at 15:6-11, 25:5-7, 61:13-17].

## B. Title VII framework

Generally, a plaintiff may establish a prima facie case of discriminatory failure to promote under Title VII by showing that: "(1) she is a member of a protected class; (2) she was qualified and applied for the promotion; (3) she was rejected despite her qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004); see also Lee v. GTE Fla., Inc., 226 F.3d 1249, 1253 (11th Cir. 2000); Taylor v. Runyon, 175 F.3d 861, 866 (11th Cir. 1999); Wu v. Thomas, 847 F.2d 1480, 1483 (11th Cir. 1988). If the plaintiff establishes a prima facie case of discrimination, she is entitled to a rebuttable presumption of discriminatory intent on

---

nor is her personnel file in the record. Pooler's bare assertions about Williams would thus be inadmissible at trial and, accordingly, the Court will not consider them here.

the part of the defendant. <u>Wilson</u>, 376 F.3d at 1087; <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1527-28 (11th Cir. 1997). The burden of production then shifts to the employer to demonstrate a legitimate, nondiscriminatory reason for not promoting the plaintiff. <u>Wilson</u>, 376 F.3d at 1087; <u>Lee</u>, 226 F.3d at 1253; <u>Wu</u>,847 F.2d at 1483 - 84. If the defendant makes this showing, the presumption of discriminatory intent vanishes and the plaintiff must show that proffered reason is a mere pretext for discrimination. <u>Wilson</u>, 376 F.3d at 1087; <u>Combs</u>, 106 F.3d at 1528.

### C. Conclusions of Law

#### 1. Prima facie case

Defendant concedes that prongs (1), (3), and (4) of the prima facie case are met for purposes of summary judgment. Doc. No. 46-1, p. 19. In regard to prong (2) (requiring a showing that Plaintiff applied for the position), Defendant argues that the EEOC and Travis are unable to establish a prima facie case of sex discrimination because Travis failed to apply for the promotion at issue. <u>Id.</u> at pp. 16 - 17.

In response to Defendant's failure to apply argument, Plaintiffs argue that Exel/PP&G's General Manager, David Harris, "intentionally duped Travis into not applying [for the vacancy at issue] by announcing, if in name only, a straw position" of Operations Supervisor – a position that Harris knew Travis did not want. Doc. No. 79, p. 8. The essence of the straw position argument is that while Defendant can show that an Operations Supervisor position was formally posted, this fact is immaterial as

there is evidence in the record that shows that the position that was actually vacated by Plaintiff's supervisor (Teal) and ultimately filled (by Pooler) was an Inventory Supervisor position – and this position was not posted.  Doc. No. 78, p. 5.

In general, a plaintiff cannot establish a prima facie case of discriminatory failure to promote without showing that she applied for the promotion.  Cooper v. S. Co., 260 F. Supp. 2d 1278, 1288 (N.D. Ga. 2003); Harris v. Warehouse Servs., Inc., 77 F. Supp. 2d 1240, 1246 - 47 (M.D. Ala. 1999).  The purpose of requiring a Title VII plaintiff to have applied for the job is to eliminate one "obvious nondiscriminatory reason: that the plaintiff was not offered the job because the company did not know [s]he was interested."  Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1133 (11th Cir. 1984).  The application requirement is excused, however, if the employer only uses informal and subjective procedures to identify a candidate.  In said context, the plaintiff need only show that the employer had some reason to consider the plaintiff for the post.  See Vessels v. Atlanta Indpt. Sch. Sys., 408 F.3d 763, 768 (11th Cir. 2005)("[W]here an employer does not formally announce a position, but rather uses informal and subjective procedures to identify a candidate, a plaintiff need not show under the second prong that he applied for the position—only that the employer had some reason to consider him for the post."); Carmichael, 738 F.2d at 1132 - 33 (11th Cir. 1984).  But if the employer has publicized the job opening and requires a formal application, a plaintiff cannot satisfy the application requirement merely by expressing

"a general interest in the position." <u>Williams v. Waste Mgmt., Inc.</u>, 411 F. App'x 226, 228 (11th Cir. 2011)(citing <u>Smith v. J. Smith Lanier Co.</u>, 352 F.3d 1342, 1345 - 46 (11th Cir. 2003)); <u>see also</u> <u>Harris</u>, 77 F. Supp. 2d at 1247.

Here, neither plaintiff disputes that Exel posted the operations supervisor vacancy on its website and provided a formal mechanism for applying. [Def's SMF 13; Pl-Int's SMF  19]. Neither plaintiff disputes that Travis did not formally apply for this vacancy. [Pl's SMF  37; Doc. 66 at 18; Travis Dep. at 96:1-3]. As stated above, Plaintiffs argue that there are genuine issues of material fact as to whether Exel posted a vacancy notice of the actual position for which Travis claims she was denied and as to whether the application requirement is therefore excused.  To this regard, the Plaintiffs ask the Court to consider the evidence showing that Travis inquired about and expressed her interest in an Inventory Supervisor position; however, was told that the position did not exist.[5] Plaintiffs also cite the Court to Defendant's own documents that show that other employees have, at various applicable times,  been referred to as Inventory Control Supervisors, as well as evidence showing that the title of the person who was hired pursuant to the Operations Supervisor vacancy announcement was changed to that of Inventory Control Supervisor immediately after Travis left her employment with the Defendant.  EEOC further argues that there is a question of

---

[5]The Court recognizes that the Defendant argues that the record does not support this assertion [Doc. No. 74, p. 6, n. 2]; however, at the summary judgment stage, the Court must consider the evidence in a light most favorable to the non-movant, here the Plaintiff.  The Court will accept the deposition testimony to this regard for purposes of summary judgment.

material fact as to whether Harris posted a different job title to intentionally dupe Travis into not applying.  Doc. No. 79, p. 8.  EEOC also argues that sex animus is revealed through such deception and  through Harris's prior comment about keeping Travis (and other women) out of the Inventory Control Supervisor position.  Id.

EEOC also argues that the policy of the application requirement (i.e., to eliminate the nondiscriminatory reason that the employer did not know that the plaintiff was interested in the position) is satisfied in this case in that "there is no lack of knowledge of the employer as to whether Travis was interested." Id. at p. 10.

In reply to Plaintiffs' argument, Defendant states that Travis admits that she knew the supervisory hierarchy at the PP&G facilities in that there were three supervisors reporting to one operations manager who reported to one general manager.  Doc. No. 74, p. 7; Doc. No. 82, p. 7.  Defendant further argues that Travis knew that there was only one supervisor position (vacated by her own supervisor) available, as well as the nature of the position, regardless of the name of the position. Id.  Exel states that "Harris testified that the only official Supervisor job title at the PP&G facility for these three Supervisor position was 'Operations Supervisor'" and that the job at issue was actually filled as an Operations Supervisor. Doc. No. 74, p. 8; Doc. No. 82, p. 8.[6]  Defendant states that the written announcement of Travis's

_____

[6]Harris further testified that "we commonly referred to operations supervisors who had inventory responsibilities as inventory supervisor, and that was a designation for people to know that this is a person we could go to to ask some questions or be able to solve some inventory type problems."  Doc. No. 53, p. 165, lines 19 -24.

12

supervisor's promotion, in which he was described as an "operations supervisor, training supervisor, inventory management supervisor, systems 'super use' and special service projects supervisor" were just designations/duties - "simply descriptions of his job duties as a PP&G Supervisor." Doc. No. 74, p. 9; Doc. No. 82, p. 8.   Defendant also states that the fact that women could apply for the open supervisor position "eviscerates Plaintiffs' argument that Harris somehow changed the job name to keep Travis or other women from applying."  Doc. No. 82, p. 9.

After review of the record and the arguments, the Court agrees that issues of material fact exist as to the following:  what position was actually being hired in 2008; whether the actual position being hired was posted; whether Travis was intentionally deceived based upon discriminatory animus when she inquired about the vacancy; and whether Travis's failure to apply was excused.

The Court finds that Defendant's arguments concerning the position being open to all women (including Travis) to apply, Travis's knowledge of the organizational hierarchy, and Harris's testimony concerning the official job title, versus job descriptions are not determinative – but merely add to the genuine disputes of material facts.  More specifically, the Court finds that while Travis admits to knowing about the hierarchy of the Defendant's organization, Travis does not admit to knowing that the three supervisor roles were all operations supervisors.  Travis's deposition testimony shows that she had no reason to believe that Teal was not an operations

13

supervisor in 2005; however, in June of 2007, she believed, based on a warehouse announcement by Harris, that Teal's job title changed to inventory supervisor. Doc. No. 49, pp. 82 - 83. To be fair to both parties, for the Court to accept Defendant's argument about what Travis should have known, it also appears that the Court would need to impose the same analysis as to what Harris should have known. For example, it could be argued that when Harris allegedly told Travis that the inventory control supervisor position did not exist, Harris should have known that this statement could later be considered deceptive. It could also be argued that Harris should have known to tell Travis that the operations supervisor position would actually perform the primary inventory control job duties that she wanted to perform and would sometimes be referred to in company documentation as inventory control supervisor. The Court will leave these "should have known despite what you were alleged to have been told and/or " arguments for a jury's determination. [7]

---

[7]The Court notes that additional arguments have been raised as to the fact that Pooler, who was hired pursuant to the vacancy announcement (and who testified that he was first informed of an inventory control supervisor opening at PP&G and was told to keep it a secret), was not required to submit an application. Doc. 59 at 14-15; Doc. 66 at 13-15. EEOC states that the fact that Pooler did not submit an application is "highly material" for two reasons: first, it demonstrates that submitting an application was not really a requirement. Second, it is inappropriate to fault Travis for not formally applying for the Open Position when Exel did not require the person it selected to submit a formal application. Doc. No. 79, p. 9. Defendant argues that Pooler's situation was "unique" and "immaterial" because it does not change the fact that Travis did not apply for the Operations Supervisor position. Doc. No. 82, p. 11, n. 9. The Court agrees that the fact that Pooler was not required to submit a formal application is material and adds to the genuine dispute of material fact as to whether a formal or informal procedure was used to select a person to fill the actual vacancy at issue.

AO 72A
(Rev.8/82)

The Court also does not find that the fact that the position was open and that women could apply "eviscerates" Plaintiffs' argument that Harris deceived Travis when she inquired about the position. If true, this deception would have kept Travis from applying and combined with other evidence (i.e., Harris's alleged statement to Teal) could be considered discrimination.

The Court finds the facts of the case of <u>Williams v. Waste Mgmt</u>, 411 F. App'x 226 (11th Cir. 2011), discussed by the parties, bears some similarity, but is ultimately distinguishable. In <u>Williams</u>, the plaintiff presented evidence showing that another person had been selected for the position before the application period expired and plaintiff was told he would not be allowed to apply. <u>Williams v. Alpharetta Transfer Station</u>, LLC, No. 1:07-cv-1949, Doc. No. 48, p. 13 -14 (N.D. Ga. 2010). On appeal to the Eleventh Circuit, the Court indicated that the plaintiff had offered "nothing other than his own conjecture that submitting an application would have been futile." 411 F. App'x at 229. In the case *sub judice*, Plaintiff has offered more than conjecture  (i.e., through at a minimum, evidence indicating that Harris told Travis that the Inventory Supervisor position did not exist and evidence indicating Harris's possible intent in making such a statement through Teal's testimony that Harris did not want a woman in the Inventory Supervisor position) to establish that issues of material fact exist as to futility; as to whether

discriminatory animus was involved at the time she inquired of the vacancy; and as to whether a formal announcement was issued for the actual position hired.[8]

Summary judgment is not appropriate at this time – as in viewing the facts in a light most favorable to the non-movant, the Court concludes that the evidence creates sufficient issues of material fact so that Travis's failure to apply for the position that was formally announced does not defeat her prima facie case as a matter of law.  Furthermore, contrary to Defendant's argument, in reviewing the record as a whole and in a light most favorable to the non-movants/plaintiffs, the Court finds that the record is not so that no rational trier of fact could find for plaintiffs.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.") and Rollins v. Alabama Cmty, 814 F. Supp. 2d 1250 (M.D. Ala. 2011) (concluding that a question of fact excused plaintiff's non-application for an advertised position where facts showed that plaintiff was told that the position would be at a salary which plaintiff found unacceptable; however, the male later

---

[8] The Court notes that Williams is a non-binding, unpublished opinion.  See Bravo v. United States, 532 F.3d 1154, 1164 n. 5 (11th Cir. 2008) (unpublished opinions are not binding precedent) and 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

16

hired for the position was given a higher starting salary than plaintiff was

informed was possible).[9]

------------------------

[9]The Plaintiffs have also argued the applicability of the futile gesture doctrine, which would only fall within the context of Travis's failure to apply for the formal announcement. ( In the event that it is determined that the vacancy at issue was for an inventory supervisor position (which was not posted); then, it could be found that Travis's general expression of interest would excuse the application requirement because the process would be considered informal and the employer would have had some reason to consider her for the vacancy.)

As stated by the magistrate in the R&R [Doc. No. 76, p. 15], in <u>EEOC v. Joe's Stone Crabs</u>, the Eleventh Circuit held that a plaintiff who failed to apply for the job at issue could still establish a prima facie case "by showing that she refrained from applying due to a justifiable belief that the employer's discriminatory practices made such application futile." 296 F.3d 1265, 1274 (11th Cir. 2002).

> To have a "justifiable belief" for purposes of this exception to the application requirement, a person must demonstrate: (1) that she had a real and present interest in the job for which the employer was seeking applications; and (2) that she would have applied for the job but effectively was deterred from doing so by the employer's discriminatory practices.

<u>Id.</u> Establishing futility thus requires a showing of discriminatory practices, which usually consists of evidence of "a known and consistently enforced policy of discrimination." <u>Shackelford v. Deloitte & Touche, LLP</u>, 190 F.3d 398, 406 (5th Cir. 1999)(citing <u>Int'l Bhd. of Teamsters v. United States</u>, 431 U.S. 324, 363-66, 97, S. Ct. 1843 (1977)). The Eleventh Circuit recently required a plaintiff to have presented evidence of "systematic discrimination that had successfully deterred job applicants from members of minority groups." <u>Williams v. Waste Mgmt., Inc.</u>, 411 F. App'x 226, 229 (11th Cir. 2011).

EEOC states that the <u>Teamsters</u> and <u>Joe's Stone Crabs</u> cases "are applicable only where the plaintiff fails to apply based on the employer's historical treatment of the protected group or where the employer's reputation of discrimination has effectively chilled members of the group from applying." Doc. No. 79, p. 11, n. 4. EEOC states that historical animus is not relevant when there is evidence of specific efforts to discourage or thwart Travis, in particular. <u>Id.</u> at p. 11.

A review of the applicable authority leads the Court to conclude that the futile gesture doctrine has been applied with a focus on historical, reputation, and/or systematic evidence. As held by the magistrate, there is no such evidence here; however, as stated above, there being genuine issues of material fact so as to allow Plaintiffs' prima facie case to go forward, the Court does not deem it necessary to engage in additional analysis of the futile gesture

### 2.  Legitimate reason

"[T]o satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Texas Dept. of Cmty Affairs v. Burdine, 450 U.S. 248, 257, 101 S. Ct. 1089, 1096 n.19 (1981); Chapman v. AI Transport,  229 F.3d 1012, 1030 (11th Cir. 2000) (indicating that the "reason proffered by the employer at the time of summary judgment [and] the reason presented to the district court is the one which will be examined); cf. Keaton v. Cobb Cnty, Ga., No. 08-11220, 2009 WL 212097 (11th Cir. 2009) (reviewing Chapman and possible exception to this rule).

The Defendant states that its "preferential transfer practice is a lawful reason to select an individual to fill a vacant position."  Doc. No. 46-1, p. 20.

The Court finds that the Defendant has met its burden of articulating a legitimate, nondiscriminatory reason for the employment action.

### 3.  Pretext

If the employer meets this burden of showing a legitimate reason for the termination, the presumption of intentional discrimination disappears; however, a plaintiff can still prove disparate treatment by, for example, offering evidence demonstrating that the employer's explanation is pretextual.  "There must be

_____

doctrine.

18

sufficient evidence to allow a reasonable fact-finder to conclude that the employer's articulated reasons are not believable. This can be accomplished by pointing to 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the proffered explanation.  The plaintiff must present significant and probative evidence of pretext in order to avoid summary judgment." Davis-Dietz v. Sears, Roebuck and Co., 284 F. App'x 626, 630 (11th Cir. 2008).  "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." Chapman, 229 F.3d at 1024 - 25.  "The inquiry into pretext requires the court to determine, in view of all the evidence, 'whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct.'" Crawford v. Carroll, 529 F.3d 961, 976 (11th Cir. 2008). "Mere conclusory allegations and assertions will not suffice." Earley v. Champion Intern. Corp., 907 F.2d 1077, 1081 (11th Cir. 1990).

Travis and EEOC have presented the following grounds to show that the stated reason for selecting Mr. Pooler is merely pretextual:  (1) Exel failed to follow its alleged preferential transfer practice[10]; (2) a discriminatory reason more likely

---

[10] Defendant argues that Travis's argument that the company did not follow its own preferential transfer policy with respect to Pooler is contradicted by the record.  Doc. No. 82,

motivated Harris to not promote Travis and deterred her from applying[11]; and (3) the reason given is unworthy of credence because there is no evidence that Harris even knew that Pooler was being laid off at the time Harris discriminated against Travis.  Doc. No. 78, p. 12; Doc. No. 79, p. 18.  EEOC states: "Harris' absolute discretion as  to whether to hire or reject Pooler, combined with the evidence of Harris'[s] discriminatory animus,[12] Travis'[s] superior knowledge of the job and Pooler's total lack of knowledge of the job's duties, and the secrecy surrounding Pooler's selection, demonstrates a question of fact as to whether the layoff procedure was the real reason Travis was not promoted or whether it is pretext for discrimination."  Id. at p. 20.

---

p. 21.  After reviewing the deposition of Franklin Hudson [Doc. No. 56, p. 59, lines 1-10 ]and Michel Pooler [Doc. No. 58, p.20, lines 23 -25 ], the Court is unable to uphold Defendant's argument, as there is evidence that at a minimum, Pooler was not required to submit a resume and/or application for the Operations Supervisor position.

 See also Bass v. Board of Cnty Com'rs, Orange Cnty, Fla., 256 F.3d 1095, 1108 (11th Cir. 2001)(overruled in part on other grounds Crawford v. Carroll, 529 F.3d 961 (11th Cir.2008)) ("An employer's violation of its own normal hiring procedure may be evidence of pretext.").

 [11]Vargas v. Chubb Group of Ins. Cos., No. 99CIV.4916, 2002 WL 31175233, at * 7(S.D. N.Y. Sept. 30, 2002) (holding that informing plaintiff that trainee position did not exist, combined with other evidence constituted evidence "that the asserted bases for denying promotion to [plaintiff] were pretextual.").

 [12]As stated above, Defendant asks the Court to consider Harris's alleged statement concerning not placing a woman in management as a remote, stale, stray, remark, insufficient to defeat summary judgment.  In support of its argument, Defendant cites Rojas v. Florida, 285 F. 3d 1339 (11th Cir. 2002).  In Rojas, the Eleventh Circuit held that a comment about a woman (who was not plaintiff) not deserving her job was isolated and unrelated to the challenged employment decision, not direct evidence of discrimination, but could "contribute to a circumstantial case for pretext."  Id. at 1343.  The Court finds that the alleged statement at issue here contributes to a circumstantial case for pretext.

In response to Plaintiffs' showing, Defendant has offered a number of arguments in an effort to dispel and/or rebut said showing.  In considering Defendant's rebuttal arguments and in view of all of the evidence, the Court finds that Plaintiffs have cast sufficient doubt on Defendant's proffered nondiscriminatory reason and offered sufficient evidence to allow a reasonable fact-finder to conclude that Defendant's purported reason for hiring Pooler is pretextual.

### Conclusion

The Court hereby **ADOPTS** the factual background, procedural background, summary judgment standard, and Title VII framework language of the R&R [Doc. No. 76] and **REJECTS** the conclusions of law.  Plaintiff and Plaintiff-Intervenor's objections [Doc. Nos. 78, 79] are hereby **SUSTAINED**.

Defendant's Motion for Summary Judgment [Doc. No. 46] is hereby **DENIED**.

The parties shall file a joint/consolidated pretrial order within **thirty (30) days** of the entry of this order.

**IT IS SO ORDERED,** this 26th day of September, 2012.

s/Steve C. Jones
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)